## CHARLES SANDFOSS v. WILLIAM JONES, GEORGE G. BLANCHARD, AND PHILO FLANSBURG.

SECTION SIX (CHAPTER ONE) OF STATUTE OF FRAUDS.—The provisions of the sixth section (Chapter One) of the Statute of Frauds relate exclusively to contracts in respect to real estate.

IDEM.—A verbal agreement was made by J. and B., who were two of several judgment creditors, with Bartram, an execution debtor, who owned a large amount of real and personal property, then under execution levy, but still in Bartram's possession, the value of which exceeded the amount due on the executions by over one half, to take into their immediate possession, in their own names, and to purchase all of said property at the Sheriff's sale for the benefit of Bartram, and to advance their own money, if necessary for that purpose; and when they should have repaid themselves for said advances, with interest, together with the amount of their own judgment demands out of the rents, issues and profits of the property, and the sales of such portions of the personal property as could be advantageously sold by them, to reconvey the portions of the property unsold to Bartram: Held, that so far as the agreement contemplated the payment by J. and B. to be made from the proceeds of Bartram's property, there was raised a resulting trust in favor of Bartram, and it was, therefore, not within the Statute of Frauds; and so far as the agreement contemplated the payment by J. and B. to be made from money to be advanced by J. and B., it was equivalent to a loan of the money and a taking of the title as a security for its repayment, under such circumstances as would amount to a fraud upon Bartram if J. and B. should afterwards be allowed to repudiate the agreement, and was, therefore, not within the statute.

IDEM.—To allow J. and B. under such circumstances to evade their promise, would be to enable them to practice a fraud upon Bartram, and convert a statute designed to prevent frauds into a shield for their protection.

IDEM.—If in such case J. and B. acted from the outset in bad faith, and entered into said agreement with the intent and for the purpose of defrauding Bartram,

by betraying him into a false confidence, and thus to get possession of his property, such fraud on their part would, of itself, take the case out of the operation of the Statute of Frauds.

APPEAL from the District Court, Eleventh Judicial District, El Dorado County.

The plaintiff appealed.
The other facts are stated in the opinion of the Court.

*C. A. Tuttle*, for Appellant.

The respondents rely upon the ground that the agreement between Blanchard and Jones and appellant was void under the Statute of Frauds. There was no attempt on the part of Bertram to defraud creditors.

The case is like A. furnishing B. money to buy land of C. for A., and B. making the purchase and taking the deed in his own name. There is the further element in this case, that B. from the beginning has resolved, when he gets the deed, to claim the property as his own; or, in other words, to defraud A. out of his money and his property. The title acquired by Blanchard and Jones under the Sheriff's deed only enabled them to hold the property until they were repaid. The money they furnished out of their own means was a loan to Bartram. (*Millard* v. *Hathaway*, 27 Cal. 130; *Bayles* v. *Baxter*, 22 Cal. 578; *Settembre* v. *Putnam*, 30 Cal. 493.)

*George G. Blanchard*, and *George E. Williams*, for Respondents.

The complaint reasonably construed shows that the property was in the custody of the law from the time it was attached until it was sold by the Sheriff. It is well settled that where one purchases and pays for property with his own money, and takes the deed in the name of another, a trust by operation of law is raised, and the Statute of Frauds does not apply. It is equally well settled that payment of the

purchase money, and at the time of the purchase, is necessary to raise a resulting trust. (*Botsford* v. *Burr*, 2 Johns. Ch. 406; 4 Kent, Vol. VIII, p. 319; *Cross* v. *Norton*, 2 Atk. 74.) The whole foundation of a trust is the payment of the purchase money, and that must be clearly set up. (2 Johns. Ch. 406; *Willis* v. *Willis*, 2 Atk. 71.) Also, if one sets up a resulting trust, and has paid no money, he cannot show by parol that the purchase was made for his benefit, or on his account, for this would overturn the Statute of Frauds. (*Irwin* v. *Ivers*, 7 Indiana, 308; *Moran* v. *Hays*, 1 Johns. Ch. 339; *Steere* v. *Steere*, 5 Johns. Ch. 1; *Bartlett* v. *Peskersgill*, 4 East, 477, note; 7 Cranch, 176.) Further, an advance of money to the purchaser after the purchase has been completed will not raise a resulting trust. (2 Johns. Ch. 413.) There must be the absence of both a consideration paid by the trustee, and a declaration of the use, to create a trust. (Saund. on Uses, 227; 4 Kent, Vol. VIII, top p. 320.)

It is also laid down in *White* v. *Carpenter*, 2 Paige's Ch. 241; *Cross* v. *Norton*, 2 Atk. 74; *Sayre* v. *Townsend*, 15 Wend. 647; 30 Maine, 121: that the whole consideration for the whole estate, or some other definite part of the whole, as one half, one third, and the like, must be paid, to be the foundation of a resulting trust, and that the contribution or payment of a sum of money generally for the estate, when such payment does not constitute the whole consideration, does not raise a trust by operation of law for him who pays it.

Also, in *Robles* v. *Clark*, 25 Cal, 321, in a case analogous to the present, where all of the purchase money, except eight hundred dollars, for a large tract of land was paid by plaintiff. In that opinion the Court refer to 2 Paige, 238; 13 Ill. 233; 14 Gray, 121; 1 Hov. on Frauds, 471; 1 Ball & Beat. 284. From these authorities and others this text of law is settled: "That a resulting trust is not created by implication of law in favor of one who pays part of the purchase money of real estate conveyed to another, unless such payment is made for some specific part or distinct interest in the estate." Also, where a man employs another as his agent to buy an

estate, and the latter buys it in his own name and with his own money, no trust is raised that can be proved by parol. (2 Story's Eq. Jur., Par. 1,201; Hill on Trustees, top p. 150.)

By the Court, SANDERSON, J.:

The defendants demurred to the complaint; the demurrer was sustained, and, the plaintiff having signified his intention to stand upon his complaint, the action was dismissed. The only ground of demurrer worthy of special notice relates to the validity, under the Statute of Frauds, of the verbal agreement, of which the plaintiff seeks a specific performance. The material facts stated in the complaint are as follows:

In August, 1865, one Bartram was the owner of a tract of valuable timber land in El Dorado County, and certain improvements thereon, consisting of a sawmill with its machinery and appurtenances, a blacksmith shop, a planing mill, and a hotel, with barns and outhouses. He was also the owner of a large amount of personal property used by him in the lumber and hotel business, which was being conducted by him upon the aforesaid real estate, consisting of mules, horses, cows, oxen, cattle, hogs, wagons, harness, chains, trucks, hay, liquors, provisions, furniture, lumber, etc.; the real estate being of the value, as alleged, of twenty thousand dollars, and the personal property of the value of fifteen thousand dollars—amounting, in the aggregate, to thirty-five thousand dollars. He was, however, indebted to various parties in the aggregate sum of about sixteen thousand and three hundred and seventy-five dollars—of which amount three thousand dollars on note and mortgage was due to the defendant Jones, and two thousand dollars to the defendant Blanchard. All his creditors brought suit—the defendant Jones to foreclose, and the others by attachments— under which all of the aforesaid property was attached, but left by the officer in Bartram's possession. Under these circumstances, Bartram applied to the defendants Jones and

Blanchard for assistance. After several interviews, it was *verbally* agreed between Bartram on the one side, and the defendants Jones and Blanchard on the other, "that Jones and Blanchard should receive possession of all of said property from Bartram, and should continue the business in their own names, and should sell so much of the personal property as could be spared from the business, and use the proceeds in the payment of Bartram's debts, and should also advance money of their own for the same purpose, so far as they should be able to do so; and that with the means thus acquired, and the profits of the business, should pay off Bartram's debts, including the debt of Jones secured by mortgage; and that if any of the property should go to Sheriff's sale under judgments which might be rendered in the actions aforesaid, they would bid it in, and hold the title as security for such advances as they might make and the debts which would then be their due, and that Bartram should oversee the business as their agent; and that whenever the sales of personal property, to be made by them, and the profits of the business should reimburse them for all advances and pay the debts due them, they should reconvey to Bartram the title, if any, acquired by them at Sheriff's sale, and restore to him the possession of the real estate, and all the personal property remaining unsold."

Under this agreement the defendants Jones and Blanchard entered into the possession of all the property, and carried on the business which had been previously conducted by Bartram. In due time judgments were obtained in the several suits which had been brought against Bartram, and executions issued, under which all the property was sold, and bought in by Jones and Blanchard, who in due time received a Sheriff's deed to the real estate in their own names. In time all claims against Bartram were extinguished, including those due to Jones and Blanchard, with money chiefly, if not wholly, derived from said property and business. Thereafter Bartram demanded of Jones and Blanchard an account of their transactions in the premises, and a reconveyance of

the real and personal property. With this demand they refused to comply. Thereafter, Bartram conveyed all his interest in the premises, legal and equitable, to the plaintiff, and the defendant Blanchard conveyed to his codefendant Flansburg, who took with notice of Bartram's equities. The complaint, in addition to the foregoing matters, charges a conspiracy and fraudulent design on the part of Jones and Blanchard from the outset, to get possession through Bartram's confidence in them, and thereafter defraud him of the property. The plaintiff demands an accounting and conveyance.

The complaint shows upon its face that the undertaking on the part of the 'defendants Jones and Blanchard, was a *verbal* undertaking, and it is therefore claimed by them that it was null and void under Chapter 1, Section 6, of the Statute of Frauds, which reads as follows: "No estate or interest in lands, other than leases for a term not exceeding one year, nor any trust or power over or concerning lands, or in any manner relating thereto, shall hereafter be created, granted, assigned, surrendered or declared, unless by act or operation of law, or by deed, or conveyance in writing, subscribed by the party creating, granting, assigning, surrendering or declaring the same, or by his lawful agent, thereunto authorized by writing."

This clause of the statute clearly relates to contracts in respect to real estate only. The contract in question, therefore, so far as it relates to personal property, is not within its operation. So far as the contract relates to the sale of real estate, it amounts to an agreement on the part of Jones and Blanchard to buy the property at Sheriff's sale for the benefit of Bartram, who was the execution debtor, and to advance their own money, if necessary, for that purpose. Whether they paid for the real estate wholly or in part with Bartram's money, or their own exclusively, is immaterial. In either event their agreement was not within the Statute of Frauds, and was not, therefore, void because it was not in writing. If the real estate was paid for by Jones and

Blanchard with the money of Bartram, there was a resulting trust in favor of the latter which a Court of equity will declare and enforce, for such a trust is expressly excepted from the operation of the Statute of Frauds. ✓(Chap. 1, Sec. 7; *Bayles* v. *Baxter*, 22 Cal. 575; *Millard* v. *Hathaway*, 27 Cal. 119; *Settembre* v. *Putnam*, 30 Cal. 490; *Runnels* v. *Jackson*, 1 How., Miss., 358; *Brown* v. *John Doe*, 7 How., Miss., 181.)

If, however, we consider the averments of the complaint in the light which is most favorable to the defendants, we have a verbal agreement on their part with an execution debtor, whose land is about to be sold by the Sheriff, to purchase it with their own funds, and hold it for his benefit. Such an agreement is equivalent to a loan of the money and a taking of the title as security for its repayment; or an agreement by one person to purchase land for the benefit of another, under circumstances which would amount to a fraud upon the latter, if the former was allowed to repudiate his promise, and, therefore, not within the Statute of Frauds.

In relation to such a contract the High Court of Errors and Appeals of the State of Mississippi said: "It is not now an open question that when a party agrees before the sale to purchase property about to be sold under an execution against a party, and to give such party the benefit of the purchase, that the agreement is binding and will be enforced. The defendant, upon the faith of such an agreement, may have ceased his efforts to raise the money for the purpose of paying off the execution, and thus preventing a sale of his property. It will not do to say that the party promising was moved merely by friendly or benevolent considerations, and may, therefore, at his option, decline a compliance with his agreement. Such considerations constitute the foundation of almost every trust, and the trustee should be held to account as nearly as possible in the same spirit in which he originally contracted. But it is said that the agreement, if in fact made, was void under the Statute of Frauds. The statute has reference alone to the sale of lands, and not to a

contract to purchase by one person for the benefit of another." (*Soggins* v. *Heard*, 31 Miss. 428.)

For the purposes of this case it is unnecessary to go so far. Doubtless the general current of authorities upon this subject is, that a dry verbal promise to purchase land for the benefit of another is within the Statute of Frauds, and cannot, therefore, be proved by parol. If a person verbally employs another as his agent to buy an estate for him, and the latter buys it in his own name, and no part of the purchase money is paid by the former, equity will not, in view of those facts only, declare a trust in favor of the principal, and enforce a conveyance from the agent. (Story's Eq. Jur., Sec. 1,201, *a.*) Yet there are cases the other way. In *Lees* v. *Nuttall*, 1 Russ. & M. 53, the plaintiff being in possession of the premises as a mortgagee, and desirious of purchasing the equity of redemption, verbally employed Nuttall to negotiate the purchase. Nuttall made the purchase in his own name and denied the trust. The Master of the Rolls decreed a conveyance on the ground of agency, and the decree was affirmed on appeal by Lord Brougham. (See also *Taylor* v. *Salmon*, 4 M. & C. 134.) But it is unnecessery to resort to any extreme view to uphold this complaint. The case made by it is far from being a mere purchase by an agent with his own funds, and in his own name, under a verbal authority, or a like purchase at an execution sale for the benefit of the execution debtor.

Upon the faith of the defendants' promise Bartram put a large amount of property in their hands, some of which was to be converted by them into cash, and the money to be realized therefrom, as well as the profits of the lumber and hotel business, was to be applied by them in protecting the property from sale, or in buying it in, if sold, and, according to the complaint, nearly all if not quite all the money used by them in purchasing the property was money so received, and therefore, the money of Bartram. These facts alone, as we consider, bring the case clearly within the rule in *Hidden* v. *Jordan*, 21 Cal. 92. The transaction was fair

and made in good faith on the part of Bartram. Not even his creditors could complain of it, for it did not tend to hinder and delay or defraud them, but, if carried out in good faith by Jones and Blanchard, secured to them the full amount of their claims. To allow the defendants, under such circumstances, to evade their promise, would be to enable them to practice a fraud upon Bartram, and convert a statute designed to prevent frauds into a shield for their protection.

In addition, if, as charged, the defendants acted from the outset in bad faith, and entered into this agreement with the intent and for the purpose of defrauding Bartram, such fraud on their part would of itself take the case out of the operation of the Statute of Frauds. (*Hidden* v. *Jordan*, *supra*.) If they entered into this agreement for the purpose of betraying Bartram into false confidence, and as a means of getting possession of his property, and defrauding him of it, or of the excess over the amount which might be required to pay off the claims of his creditors, equity will not permit them to shield themselves behind the statute. The statute was designed for no such purpose. · It was designed to prevent fraud, not to promote it.

Judgment reversed, with leave to the defendants to answer within fifteen days after notice of filing of the remittitur in the Court below. And further ordered that the remittitur issue forthwith.