H. R. THOMAS, *Plaintiff in Error*, v. MRS. NETTIE GOODBREAD, FOR THE USE OF S. C. COLE, *Defendant in Error*.

Opinion Filed August 6, 1919.

1. Under Section 1522 General Statutes of Florida, judgments and decrees of the Circuit Courts of this State, and certified copies thereof are admissible as *prima facie* evidence of the entry and validity of such judgments and decrees.

2. Defects in writs of execution do not vitiate sales unless they are such as render the writs void and are not amenable.

3. A variation between the amount of a judgment and the execution issued thereon does not avoid the sale thereunder where such variation is an apparent clerical error and does not harm the defendant and the judgment is so described in the execution as to clearly identify it.

4. A mortgagee of land who acquires legal title in consequence of a sale under execution against the mortgagor in favor of a third party, will be held to hold such legal title in trust for the mortgagor, when it appears that the mortgagee promised

the mortgagor orally to buy the land for his benefit and to convey the same to the mortgagor upon payment by him of the purchase price with agreed interest; it also appearing that the mortgagor refrained from further protecting the property from sale, and that the mortgagee acquired the title at a grossly inadequate price.

5. Where one buys land at a judicial sale under a parol agreement to purchase for another, and fails to convey according to the agreement, a constructive trust arises where the promisee owned the estate and the purchase was agreed to be made for his benefit.

6. Equitable estoppels are proper defenses in actions of ejectment in this State, and evidence of such estoppels is admissible under the plea of not guilty.

7. One who acquires legal title to land under such circumstances as to create a constructive trust in favor of another is estopped from asserting such legal title for the purpose of dispossessing such other person who held possession at the time such legal title was acquired.

A Writ of Error to the Circuit Court for Columbia County; M. F. Horne, Judge.

Judgment reversed.

J. B. Hodges, for Plaintiff in Error;

A. B. & C. C. Small and Guy Gillen, for Defendants in Error.

———————

REAVES, Circuit Judge.—Mrs. Nettie Goodbread, for the use of S. C. Cole, sued H. R. Thomas in the Circuit Court of Columbia County in an action of ejectment, and from

the verdict and judgment in favor of the plaintiff the defendant sued out a writ of error from this court.

In disposing of the assignments of error we shall group them with reference to kindred questions, rather than discuss them numerically.

The plaintiff undertook to prove title by showing that judgment was recovered by one A. S. Goodbread, the husband of Mrs. Nettie Goodbread, against the defendant, Thomas; that the property involved in this suit was sold under an execution issued upon said judgment and conveyed by the sheriff to Mrs. Nettie Goodbread, the wife of the plaintiff in execution, and subsequently conveyed by her to the usee, S. C. Cole. Error is assigned upon the admission in evidence of a certified copy of the judgment without also offering enough of the judgment record to show that the court had jurisdiction, and counsel cites in support of his contention, Donald v. McKinnon, 17 Fla. 746; McGehee v. Wilkins, 31 Fla. 83, 12 South. Rep. 228. But since these cases were decided judgments and decrees of the Circuit Courts of this State and certified copies thereof have been made admissible as *prima facie* evidence of the entry and validity of such judgments and decrees by express provision of statute. See Section 1522, General Statutes, 1906, being Section 1, Chapter 4723, Acts of 1899. Under this statute a certified copy of the judgment was properly admitted, and it devolved upon the other party to impeach its validity, if he could do so, the statute making the judgment *prima facie* evidence only.

The third assignment of error questions the propriety of admitting in evidence the execution under which the property was sold. The objections are (1) that there is a fatal variance between the judgment and the execution in that the judgment is for $139.10 and the execution for

$129.10; and (2) that it was not shown that the execution offered was the execution issued on the offered judgment.

That the execution was for ten dollars less than the judgment clearly did not harm the defendant and did not render the sale void. It was at most an amendable defect. Adams v. Higgins, 23 Fla. 13, 1 South. Rep. 321.

The second ground of the objection is also untenable. The execution describes the judgment by its date, the court in which obtained, the names of the parties to the cause, etc., with absolute accuracy, except as to amount, and in the absence of a showing to the contrary we must presume that the slight difference in amount was due to a clerical error, and would not affect the sheriff's deed to property sold thereunder. McKinnon v. Lewis, 64 Fla. 378, 60 South. Rep. 223.

What we have said disposes of the objections to the introduction in evidence of the deeds from the sheriff to Goodbread and from Goodbread to Cole which constitute the basis of the fourth and fifth assignments of error. This brings us to consider together the first, sixth, seventh, eighth, ninth and tenth assignments of error; which raise the question of whether or not the defendant should have been allowed to defend on the ground that Cole, who then held a mortgage given by defendant on the land in question, with other lands promised the defendant orally that he would buy the property at the execution sale for defendant, hold it for his benefit, and re-convey to him upon the payment of the purchase price, with ten per cent. interest; that defendant relied upon Cole to protect him as stated, that Cole, instead of buying at the sheriff's sale, let Goodbread buy in the property and then bought from Goodbread at the price of

$100.00, the property being worth about $1400.00, telling defendant that he worked it that way because he could get the property cheaper; and that defendant thereafter offered to pay Cole the purchase price with ten per cent. interest, which Cole refused to accept, putting the defendant off at the time upon some pretext, and finally disavowed the alleged oral contract and claimed the property as his own. This defense was first tendered in the form of a plea on equitable grounds, but the court denied the application for leave to file the plea. Then at the trial the testimony was offered under the plea of not guilty, and objected to "because it has been shown that the alleged agreement was oral or verbal and not in writing, and that it is not pertaining to any interest or alleged interest in the land in controversy." This objection was sustained by the trial judge, who then, upon motion of counsel for plaintiff, directed a verdict for the plaintiff. This state of the record presents for our determination two questions: (1) Assuming the proffered testimony to be true (which the jury alone had the power to determine) did it constitute a legal defense? If so, then (2) Was such testimony admissible under the plea of not guilty, or should a special plea on equitable grounds have been interposed?

Discussing these points in the order named it seems necessary to determine in what relation Cole stood toward the defendant under the facts stated, and in what legal category the transaction should be placed. On behalf of the defendant it is argued that the relation was purely that of principal and agent, and that the statute of frauds therefore has no application, and in support of this con-

tention we are cited to but one authority, namely: Schmidt v. Beiseker, 14 N. D. 587, 105 N. W. Rep. 1102, 5 L. R. A. (N. S.) 123.

Counsel for plaintiff on the other hand argues that the case is one of vendor and purchaser inasmuch as Cole agreed to buy the land in his own name at his own cost and resell to defendant. Or, counsel further suggests, if the arrangement did not create the relation of vendor and purchaser in the ordinary sense of those terms, it did create a parol declaration of trust, inasmuch as Cole was to hold title for defendant; and in either case it is argued that the proffered testimony is precluded by the statute of frauds, which not only applies to the sale of land, or any interest in land, but also applies to the creation of a trust in land. Sections 2448, 2452 and 2453, General Statutes, 1906, Compiled Laws, 1914.

We are unable to agree with the theory advanced by either counsel. On the contrary, we think the transaction constitutes Cole a trustee of a constructive trust, to which the statute of frauds has no application, but which is expressly excepted by the verbiage of the statute. Section 2452, General Statutes, 1906, Compiled Laws, 1914; Boswell v. Cunningham, 32 Fla. 277, 13 South. Rep. 354. While we are not favored by the citation of any Florida case in the brief of either counsel on the point in question, we think the determining principles of this case have been fully settled by this court in the cases which we shall now consider.

In the case of Boswell v. Cunningham, *supra,* it appears that Boswell & Rose, being engaged in the business of real estate agents, were employed by Carrie H. Cunningham to purchase for her a designated piece of property; that said agents negotiated the purchase at a given price,

which was approved by their principle who paid $100.00
towards the purchase price, and immediately left the
State of Florida for her northern home to procure the
balance of the purchase money, and did procure the
same and so notified her agents. But in the meantime
one of said agents had taken title in himself to the
property at a materially less price than that for which
he had bought for his principal, but did not notify his
principal of his own purchase, and she did not learn
thereof until after she had notified said agents of her
readiness to pay the remainder of the purchase price.
Under the facts stated the court found that the agents
had put themselves in a position adverse to their prin-
cipal during the continuance of their agency, and instead
of giving to their principal their skill, ability and indus-
try, to which she was entitled, had betrayed their prin-
cipal in their own interest, and under such circumstances
the court impressed a trust upon the land so purchased
by the agents, and decreed that the purchasing agent
held title for the benefit of his principal. It is well to.
note that in this case the principal had paid a portion
of the purchase money, that the agents were regular real
estate agents and were employed in the line of their
usual business, and presumably for the usual commission
or charge made by them. Hence the case could hardly
be considered as authority for the proposition that in all
cases where one has been engaged by parol to purchase
land for another, and instead of so purcahsing takes
the title in his own name and pays for it with his own
money, he should be charged as trustee for the benefit
of such other. On the contrary, in a much later case,
to-wit: that of Parramore v. Hampton, 55 Fla. 672, 45
South. Rep. 992, this court declined to apply the doctrine

of constructive trust.   In this case it seems that one
of the defendants owned a half interest in the real es-
tate and the other two defendants owned the other half
interest, and that the one who owned the half interest
agreed with the complainants to purchase the other half
interest owned by the two other defednants for the bene-
fit of complainant and such defendant, but failed to
carry out his agreement with complainant and purchased
the said half interest for his own benefit alone.   The
complainant paid no part of the purchase money, owned
no interest in the land, so far as the opinion discloses
defendant was not to receive any consideration for his
services.   It was a simple parol promise to purchase the
property for the joint account of himself and complain-
ant.  We quote from the opinion, beginning on page 679,
as follows: "He does not own any legal interest what-
ever in the property and does not set up any contract
rights therein.  Hampton is not and was not his agent
in any sense in the management or control of said prop-
erty, and occupied no fiduciary relation of any sort to
Parramore with respect to the property.  The whole prop-
erty belonged to Hampton and the Tedders.  Not a cent
of Parramore's money went into the purchase of the
option from the Tedders by Hampton.  We are referred
to no authority and have seen none which holds that a
constructive or resulting trust is established by such cir-
cumstances as these.  It is not every case of a breach of
contract or promise that a court of equity will construe
into a constructive or resulting trust.' If Parramore had
actually furnished the money for the purchase of the
Tedder interest and it had been used by Hampton for
that purpose, and he had bought in his own name, or if
Hampton stood in some sort of fiduciary relation to Par-

ramore with respect to this property, a different case would be presented." Citing Tiffany & Bullard on Trust and Trustee, page 28, *et seq.*; Underhill on Trust and Trustee, pages 160-175, and Patrick v. Kirkland, 53 Fla. 768, 43 South. Rep. 969.

The last cited case we think controls the case at bar. In this case the lessees for turpentine purposes of land upon which an execution had been levied were applied to for a loan to prevent a sale of the land, and orally agreed with some of the heirs of the exectuion debtor that the lessees would bid in the land at the execution sale, and upon payment by the heirs of the amount with interest the land would be re-conveyed to them, and in the meantime that the usual rent would be kept account of and settled when the property should be reconveyed. The lands were alleged to be worth $3000.00 and were bought in for $250.00. After purchasing the land the lessees repudiated their oral agreement to re-convey them and asserted their absolute ownership, but the court held that they held said lands as trustees for the benefit of the heirs of the execution debtor. The principle of law as laid down in the first head-note is as follows: "A mere parol agreement without consideration to buy in land at an execution sale and to re-convey it to the judgment debtor upon payment of the purchase price and interest, may not create a trust in favor of the judgment debtor. But where there is in the transaction an element of equity arising from fraud, confidential relation, refraining from bidding at the sale or from further protection of the property from sale, gross inadequacy of the purchase price, the supplying by the debtor of a part of the purchase money, or otherwise, such circumstances may be shown by parol and establish a trust."

Attention is called to the citation of authorities given in this case on page 773. The case of Ward v. Spivey, 18 Fla. 847, is also helpful.

In addition to these decisions of this court the adjudicated cases generally hold that where one buys land at a judicial sale under a parol agreement to purchase for another and fails to convey according to the agreement, a constructive trust arises where the promisee furnished the purchase money, or had an actual interest in the estate, or a *bona fide* claim thereto. Chadwick v. Arnold, 34 Utah 48, 95 Pac. Rep. 527; Griffin v. Schlenk, 31 Ky, Law, 422, 102 S. W. Rep. 837; Day v. Amburgey, 147 Ky. 123, 143 S. W. Rep. 1033; Sandfoss v. Jones, 35 Cal. 481; Davis v. Spicer, (Ky.) 128 S. W. Rep. 294; Lancaster Trust Co. v. Long, 220 Pa. St. 499, 69 Atl. Rep. 993; Ryan v. Dox, 34 N. Y. 307, 90 Am. Dec. 696; Gruhn v. Richardson, 128 Ill. 178, 21 N. E. Rep. 18; Baegle v. Wentz, 55 Pa. St. 369, 93 Am. Dec. 762.

With respect to the question when a constructive trust will be created by a court of equity, Perry on Trusts (6th ed.), Section 171, says: "Thus where one buys land at an execution sale, or sale under a trust deed, under an agreement with the debtor that the latter may redeem, the purchaser holds in trust. It would be a fraud to allow him to repudiate the contract."

Many cases are cited in support of the text. Also see Pomeroy's Equity Jurisprudence, (14th ed.), Sections 1055-1056. From Note 1 to Section 1055, on page 2413, we quote as follows: "The doctrine is often used with great efficiency to prevent the triumph of fraud and to protect persons under necessities in cases where at execution sale, or mortgage foreclosure, or other compulsory public sale, a party buys in land under a prior fradulent promise

made to the owner that the purchaser will take the title, hold the property for the benefit of such owner, and will reconvey to him on being repaid the amount advanced for the purchase price, and having thus by fraudulent contrivance cut off competition and prevented the owner from making other arrangements to protect his property, and having obtained the property for much less than its real value, he refuses to abide by his verbal promise and retains the land or other property as absolutely his own, equity will relieve the defrauded owner by impressing on the property a trust *ex malificio,* and by treating the purchaser as trustee *in invitum.*"

A great number of authorities are cited as supporting this text.

But one other consideration needs to be noticed in determining the point under discussion. We have already found that it is not every case of a breach of contract or promise that a court of equity will construe into a constructive or resulting trust. Parramore v. Hampton, 55 Fla. 672, 45 South. Rep. 992. And it has not been determined by this court that "a mere parol agreement without consideration to buy in land at an execution sale and to reconvey it to the judgment debtor upon the payment of the purchase price and interest" may create a trust in favor of the judgment debtor, but it has been determined that "Where there is in the transaction an element of equity arising from fraud, confidential relation, refraining from bidding at the sale or from further protection of the property from sale, gross inadequacy of the purchase price, the supplying by the debtor of a part of the purchase money, or otherwise, such circumstances may be shown by parol and establish a trust." Patrick v. Kirkland, 53 Fla. 768, 43 South. Rep. 969.

The question then is whether the facts of the case at bar bring it within the class affirmatively decided to constitute constructive trusts. Turning to .the transcript and noting the testimony which was offered and rejected, we find that Mr. Thomas testified as follows: "Q. Did you ever agree with Mr. Cole about purchasing that land at the sheriff's sale, or not A. Yes, sir. Q. What was that agreement? A. That agreement was that he was to take that up and I was to pay him ten per cent. on the money until I paid him or made new papers. Q. He was to take up what, Mr. Thomas? A. The land at the sheriff's sale. He said that he could buy that from Mr. Goodbread for fifty or sixty dollars, and I told him to give seventy-five, and the next time that I saw Mr. Goodbread he told me that Cole had given one hundred for it. That was twenty-five more than I told him to give, but he had done it. Q. At that time did you owe Mr. Cole other money? A. Seven hundred dollars and interest. Q. Was that secured to him in any way? A. Yes, by mortgage on this land that is in suit and eighty-five acres extra. Q. You were living on the Adams' Place at that time; A. Yes, sir. Q. This note and mortgage was not then settled; A. No, sir. He said that he would buy it and that he would protect me in it. Q. Mr. Cole was foreclosing that mortgage at the time of the sale? A. Yes, sir. In a few days he started foreclosure. Q. His agreement was that he would buy it in for ten per cent? A. Yes, sir, and he told me afterwards that he let Mr. Goodbread buy it, that he could buy it from him cheaper than he could at the sale. Q. He told· you that he paid one hundred dollars for it? A. Yes, sir. Q. Did you tell him that you would pay the one hundred dollars and interest? A. Yes, sir. Q. And you understood

all the time that he had bought this title for you? A. Yes, sir. Q. When did you first find out and ascertain that he was not going to keep his agreement? A. When I went to him to settle the mortgage I found out that he did not want to talk about it and put me off until later. He said that he would have it fixed right and that he would talk in a few days. Q. He didn't deny that he had bought this title for you; A. Not until I was ready to pay the whole thing. Q. What happened when you did pay the mortgage; A. He refused me the land."

Then after showing the money was paid into court, etc., and stating that no one was present at the time of the parol agreement, the witness after being asked where the agreement took place continued his testimony as follows: "A. At one time it was in his store, and the next time when he talked to me about it he took me out of the store. On the day of the sheriff's sale he said leave it to him and for me to have nothing to do with it, and that he was working it and it would not cost me anything. Q. He told you to leave the sale? A. Yes, sir. Q. And you went right off? A. Yes. He asked me if he had ever done me any harm, to leave it to him, that he would work it. Q. What is your property worth? A. About fourteen hundred dollars."

This testimony taken as true clearly brings the defendant within the rule laid down in Patrick v. Kirkland, *supra.* In other words, it shows not a mere parol agreement without consideration to buy the land for the defendant, but Cole was the creditor of the defendant, holding a mortgage on this particular land with other lands, and therefore the man to whom the defendant would naturally go, and it appears that by reason of his promise to buy the land and hold it for the defendant until such

time as he could pay the cost and ten per cent. interest that the defendant refrained from making any further effort to protect himself or to protect his property from sale. The property was actually acquired by Mr. Cole for a grossly inadequate price, to-wit, for one hundred dollars, when it was worth about $1400.00. Under these circumstances it is apparent that other equities than the mere ownership of the land by the defendant, and the mere parol promise by the complainant to purchase for his benefit, enter in so as to bring the facts of this case clearly within the authorities which require special equities to be shown in order that the trust may be impressed. The promises as testified to clearly lulled the defendant into repose and prevented him from making other effort to protect his property. Whether he knew of another person to whom he might turn, or another source to which he might apply for relief, is immaterial. It is enough to say that relying upon the promises of the complainant he did not make further effort. What the result of further effort would have been is necessarily problematical, and the courts should not undertake to determine whether or not other means of relief were probably open to the owner, which he was prevented from availing himself of, because it would be impossible to say whether such means would or would not have proven effective. Sandfoss v. Jones, 35 Cal. 481.

In Soggins v. Heard, 31 Miss. 426, quoted in Sandfoss v. Jones, 35 Cal. 481, the High Court of Errors and Appeals of the State of Mississippi, said: "It is not now an open question that when a party agrees before the sale to purchase property about to be sold under an execution against a party, and to give such party the benefit of the purchase, that the agreement is binding, and will be

enforced. The defendant, upon the faith of such an agreement, may have ceased his efforts to raise the money for the purpose of paying off the execution, and thus preventing a sale of his property. It will not do to say that the party promising, was moved merely by friendly or benevolent considerations, and may, therefore, at his option, decline a compliance with his agreement. Such considerations constitute the foundation of almost every trust, and the trustee should be held to account as nearly as possible, in the same spirit in which he originally contracted."

An examination of the authorities will disclose that many of them simply lay down the general proposition that where one buys land at a judicial sale under a parol agreement to purchase for another, and fails to convey according to the agreement, a resulting trust arises where the promisee owned or had any interest in the land, without discussing other equities or other equitable considerations. And while the facts of this case, as we have above pointed out, make it unnecessary to so decide, it would appear to be hardly practicable in all cases to search for further equities, and that it would be enough to say with the Mississippi and California court above quoted that "the defendant upon the faith of such an agreement may have ceased his efforts to raise the money for the purpose of paying off the execution and thus preventing a sale of his property." In fact, it could only be for the purpose of saving his property that such an agreement would be made, and it it but reasonable and natural to suppose that further efforts would be made, did not the particular promisor afford sufficient assurance that he would make the desired purchase and therefore afford the desired protection.

But one other question remains to be considered, namely: Was it necessary that this defense be pleaded in the form of a special plea on equitable grounds, or was it admissible under the general issue. This court has repeatedly held that an equitable estoppel may be shown as a defense to a suit in ejectment under the plea of not guilty. Hagan v. Ellis, 39 Fla. 463, 22 South. Rep. 727; Coram v. Palmer, 63 Fla. 116, 58 South. Rep. 721. The reason for this rule is tersely stated in Tyler v. Hall, 106 Mo. 313, 17 S. W. Rep. 319, cited in Hagan v. Ellis, *supra,* as follows: "It is true generally that an estoppel must be pleaded in order to be available as a defense, but the rule does not apply to ejectment suits in which the parties do not set up the title on which they rely. The pleadings in this class of cases are not required to give notice to the opposite party of the title upon which reliance is placed."

It is clear that if the usee, Cole, acquired title under such circumstances as to create a constructive trust in favor of the owner of the land, as we have above shown, then he is estopped from asserting his title as against the owner, who was at that time and presumably has ever since been in possession, for the purpose of ousting him and acquiring possession himself to the land which he does not equitably own and to which he holds the legal title in trust for the benefit of Thomas, the defendant.

Any doubt as to whether the agreement testified to was sufficiently definite as to time of performance, etc., is dispelled by Patrick v. Kirkland, *supra.*

The judgment should be reversed and the cause remanded for a new trial.

PER CURIAM.—The record in this cause having been considered by this court, and the foregoing opinion prepared under Chapter 7837, Acts of 1919, adopted by the court as its opinion, it is considered, ordered and adjudged by the court as its opinion, it is considered, ordered and adjudged by the court that the judgment herein be and the same is hereby reversed.

BROWNE, C. J., AND TAYLOR, WHITFIELD, ELLIS AND WEST, J. J., concur.