**In re Osceola Cabot KYLE, Debtor.**

**Osceola Cabot KYLE, Plaintiff,**

v.

**Daniel BUDZINSKI, Defendant.**

**Bankruptcy No. 87–02713–BKC–AJC.
Adv. No. 90–0161–BKC–AJC–A.**

United States Bankruptcy Court,
S.D. Florida.

Dec. 14, 1990.

D. Jean Ryan, Miami, Fla., for debtor/plaintiff.

William M. Tuttle, II, Catlin, Saxon, Tuttle & Evans, Miami, Fla., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

A. JAY CRISTOL, Bankruptcy Judge.

THIS CAUSE came on for trial before the Court on August 14, September 20, and October 23, 1990. The Court has examined the evidence and considered the testimony presented, observed the candor and demeanor of the witnesses, considered the arguments of counsel, and being otherwise duly advised in the premises, does hereby make the following findings of fact and conclusions of law:

The plaintiff is a debtor before this Court by virtue of a voluntary petition filed under Chapter 11 on July 30, 1987; which case was later converted to Chapter 7 liquidation on November 23, 1988. During the Chapter 11 proceedings, the debtor was the title owner of an approximate 17½ acre parcel of real estate upon which the second mortgage was in arrears. This property was listed in the debtor's schedules as his homestead property.

The debtor, during the Chapter 11 case, attempted to refinance the property, or to sell a portion of same to satisfy the outstanding indebtedness. This Court finally allowed a one acre parcel, containing the debtor's residence and veterinary clinic, to be severed from the total parcel, and entered an order approving the sale of this specific one acre to the defendant for $35,-000.00. The defendant paid $33,000.00 of the purchase price. The remaining balance of $2,000.00, plus other surveying and closing costs were paid by other parties.

Pursuant to the order approving the sale, the second mortgagee was entitled to the issuance of a certificate of title on the remaining 16½ acres. Title to the approximate one acre parcel passed to the defendant through a Special Warranty Deed, which was properly recorded. The debtor has remained in possession of the property and continued to reside on the property up to, and including, the present date.

The plaintiff and defendant essentially agree as to the facts as set forth above. It is from this point that the positions of the parties depart with both parties now disputing the rightful ownership of the subject one acre parcel of property.

It is the plaintiff's position that there was an oral agreement that the defendant would purchase this one acre parcel of property on behalf of the debtor and that the property would be reconveyed to the debtor when he had the financial ability to reimburse the defendant. It is further alleged by the debtor that despite repeated requests and demands for same, the defendant has refused to reconvey the property, per the agreement, but has demanded an amount far in excess of the agreement for the return of the property. Accordingly, it is the debtor's position that a constructive trust should be imposed on the property for the debtor's benefit. The debtor has also asserted other claims for specific performance and relief from judgment based upon fraud.

The defendant asserts that there never was any such oral agreement, and that the complaint is without merit.

It's a fact of life that a beautiful ripe peach or apple, with the passage of time turns rotten. So, in this case, a beautiful, benevolent act by the defendant, and the generous helping of a friend to save his home, with the passage of time turned rotten and corrupt, with the benefactor turning into an over-reacher.

It is well established that the bankruptcy court must look to state law to determine if a constructive trust comes into existence. *City National Bank of Miami v. General Coffee Corporation (In re General Coffee Corporation)*, 64 B.R. 702 (S.D.Fla.1986), aff'd 828 F.2d 699 (11th Cir.1987), *cert. denied* 485 U.S. 1007, 108 S.Ct. 1470, 99 L.Ed.2d 699 (1988), citing *Matter of Esgro, Inc.*, 645 F.2d 794 (9th Cir.1981) and *In re Shepard*, 29 B.R. 928 (Bankr.M.D.Fla. 1983).

Under Florida law a constructive trust is defined as a remedial devise with dual objectives—to restore property to its rightful owner and to prevent unjust enrichment. *Abreu v. Amaro*, 534 So.2d 771 (Fla. 3rd D.C.A.1988). Furthermore, it is clear that a constructive trust can be proved by parol evidence under a clear and convincing stan-

dard. The elements to establish a constructive trust are: (1) a confidential relationship; (2) by which one acquires an advantage; (3) which one should not, in good equity and good conscience, retain. *Williams v. Department of HRS*, 522 So.2d 951 (Fla. 1st D.C.A.1988). It has also been established, under Florida law, that the trust is created when the fraud occurs and not when the Court decrees the trust. *In re General Coffee, supra.*, 64 B.R. 702 at 704.

The long-standing authority of *Thomas v. Goodbread*, 78 Fla. 278, 82 So. 835 (1919), (wherein the court held that where a party buys land under a prior fraudulent promise to the owner that he will take title at a judicial sale and hold the property for the benefit of such owner, and he refuses to abide by his oral promise and retains the property as his own) establishes that equity will relieve the defrauded owner by impressing a constructive trust on the property for his benefit. Additionally, this case holds that the statute of fraud defense is inapplicable to the imposition of constructive trust. *Goodbread, supra.*, 82 So. at 837.

Fortunately, for the debtor, who was at the time unable to fend for himself, sufficient clear, strong and unequivocal evidence exists to establish a constructive trust in favor of the debtor against that of the defendant. The Court, in reviewing the testamentary evidence finds that Mrs. Griffith was credible; Mrs. Bridges was credible; and that the debtor's memory is very poor. The Court further finds that the defendant was not credible, nor forthcoming. Further, the testimony of the defendant's prior counsel was credible, but added nothing, and the testimony of Kay Canington was credible, as was the testimony of Thomas Householder.

Based upon a thorough review of the evidence and testimony presented, the Court finds that the defendant does not have clean hands. He put up $33,000 towards the purchase price, and yet has made no effort to do equity and repay the balance of the purchase price, which he did not pay. Nowhere in the pleadings or in this proceeding was any such offer made.

Furthermore, the defendant may have jeopardized his entire cash advance by having demanded $120,000.00 for the property, which exceeds the allowable interest rate on a loan under Florida usury law.

The defendant's argument that the balance of purchase funds due were paid by the debtor's own funds, only causes this Court to find contrary to the defendant's position. If the debtor had no interest in the property, and if the property was being sold from the bankruptcy estate to the defendant, there would be no reason for the debtor to pay or contribute any portion of the purchase price. The Court deems it preposterous to assume that Mrs. Griffin and Mrs. Bridges, (who were, apparently, only trying to help the debtor) contributed over $2,000.00 in cash plus $1,600.00 to $1,700.00 for survey and other closing costs in order that the defendant could buy the property. It is clear to the Court that they were trying to help the debtor, not make money, or a profit, or give a gift to the defendant.

The Court does not believe that it is important to determine whether the debtor and the defendant were friends or had any type of close personal relationship prior to the event of the acquisition. The Court finds that the "confidential relationship" between the parties was that fiduciary relationship which arose when the property was acquired and it was represented by the defendant to the debtor that this acquisition was being made for the benefit of the debtor. The defendant's mother testified, and the Court so finds, that the property was purchased for the benefit of the debtor. Accordingly, the Court finds that a constructive trust will be imposed on the property in favor of the debtor.

Additionally, the Court finds that there were further oral agreements regarding reimbursement to the defendant, by the debtor, for certain improvements and repairs to be made to the subject property. We now have in dispute, according to the parties, the issue of $39,639.32, which was admitted or conceded by the debtor,

against a claim of $42,525.37, which was claimed by the defendant. The Court is of the opinion that the difference of about $3,000.00 includes some items that the defendant could not properly account for and some items that are doubtful. The Court, therefore, determines, that the basic amount found to be due and owing to the defendant is $41,000.00. To that there must be added an additional item for the defendant's labor.

The defendant testified that he had visited the property for approximately 300 days on an average of one or two hours per day. That would allow for him being there for many more hours on some days and not at all on other days. He also testified that he made in his business, when he did his normal work, a rate of about $10.00 per hour. Although these are in essence estimated figures since the defendant did not keep time records, the Court deems it appropriate to determine that the defendant is entitled to be compensated for an hour and a half a day for 300 days at the rate of $10.00 per hour for a total of $4,500.00.

As to interest, arguments are made at two extremes. On one hand, that Florida Statute § 687.01 calls for interest at the rate of 12 percent. On the other hand, that there was no agreement as to interest and that no interest should be paid absent such an agreement. The Court finds that neither of these positions is appropriate. In an effort to make the defendant whole, he should be compensated at the rate of interest that he lost or would have earned on his money. The rate of interest that would have been paid by the institution where the defendant had his money on deposit approximated a weighted average of 7.8 percent.

Accordingly, the Court hereby imposes a constructive trust on the property for the benefit of the debtor, and orders the reconveyance of same to the debtor upon payment of the sum of $41,000.00, plus $4,500.00 for defendant's labor, and $7,547.01 for interest, for a total amount of $53,047.01, which sum shall be paid to the defendant within thirty (30) days of the date of this order. Said payment to defendant shall be held in escrow by defendant's counsel until such time as defendant has executed and delivered to plaintiff a warranty deed reconveying the property to plaintiff, together with the insurance policies covering said property and the roof guarantee, if any, which shall in no event be later than 45 days from the date of this order.

The Court further finds for the defendant and against the debtor on the Count involving specific performance. However, by virtue of this Court's holding in favor of the plaintiff for the imposition of a constructive trust on the property, the Court need not consider, nor does the Court address, the merits of plaintiff's remaining allegations or the defenses asserted thereto.

## FINAL JUDGMENT

IN CONFORMITY with the Findings of Fact and Conclusions of Law of even date, it is hereby

ORDERED AND ADJUDGED that a final judgment shall be entered imposing a constructive trust for the benefit of the debtor on the one acre parcel of property located at 12750 S.W. 208th Street, the legal description of which is attached hereto as Exhibit "A".

IT IS FURTHER ORDERED that the defendant DANIEL BUDZINSKI, shall reconvey this property to plaintiff, OSCEOLA CABOT KYLE, upon the debtor's payment of the sum of $41,000.00, plus $4,500.00 for DANIEL BUDZINSKI's labor, plus $7,547.01 for interest, for a total amount of $53,047.01. This sum shall be paid to the Defendant within thirty (30) days of the date of this Order.

IT IS FURTHER ORDERED that upon presentation of these funds to defendant's counsel, said fund shall be held in escrow until an executed special warranty deed reconveying title to plaintiff, the insurance policies covering the property and the roof guaranty, if any, are delivered to plaintiff's counsel, which shall in no event be later than 45 days from the date of this Order.

IT IS FURTHER ORDERED that this Court shall retain jurisdiction of this matter for enforcement of this Final Judgment,

and for determination of assessment of costs and fees upon proper application.

DONE AND ORDERED.

## EXHIBIT A

### PARCEL "A"

LEGAL DESCRIPTION:

A parcel of land, lying, being and situate in the SE ¼ of Section 11, Township 56 South, Range 39 East, Dade County, Florida, being particularly described as follows:

COMMENCE at the Northeast corner of the SE ¼ of Section 11, Township 56 South, Range 39 East, Dade County, Florida; thence run South 89° 29' 58" West along the North boundary of the SE ¼ of said Section 11 for a distance of 610.36 feet to the POINT OF BEGINNING of the parcel of land hereinafter to be described; thence run South 00° 51' 09" East for a distance of 185.09 feet to a point; thence run South 89° 35' 24" West for a distance of 290.68 feet to a point; thence run North 00° 51' 09" West for a distance of 184.625 feet to a point of intersection with the North boundary of the SE ¼ of said Section 11; thence run North 89° 29' 58" East along the last described line for a distance of 290.68 feet to the POINT OF BEGINNING, SUBJECT to a dedication to Dade County of the North 35.00 feet thereof for road purposes, containing a net area after dedication of 1.00 Acre, more or less.