503 So.2d 1330 (1987)
Joanne POND, Appellant,
v.
DEPARTMENT OF HEALTH AND REHABILITATIVE SERVICES, DISTRICT 7, ORANGE COUNTY, AFDC UNIT # 18, Appellee.
No. BN-222.
District Court of Appeal of Florida, First District.
March 10, 1987.
*1331 Jerrie G. Magruder, for Legal Aid Society of the Orange County Bar Assn., Inc., and Lester C. Wisotsky, for Greater Orlando Area Legal Services, Inc., Orlando, for appellant.
James A. Sawyer, Jr., Dist. Counsel, Dist. VII, Dept. of Health and Rehabilitative Services, Orlando, for appellee.
WIGGINTON, Judge.
Joanne Pond brings this appeal from the final order of the Office of Public Assistance Appeal Hearings, Department of Health and Rehabilitative Services (Department), upholding the denial of her application for benefits from Aid to Families with Dependent Children (AFDC). We reverse.
The circumstances leading to this appeal began on November 7, 1985, when Ms. Pond initially applied for AFDC benefits. She was not interviewed until December 3, well beyond the 15 days within which, according to the Department's manual, an initial interview should take place. During the initial interview, she candidly explained to the caseworker that she was required to pay $95 rent per week, and was receiving the money to pay the rent directly from friends and neighbors. Ms. Pond testified that following that revelation, the caseworker allegedly told her to continue to borrow the money as she was doing, but to verify all the contributions. The caseworker never told appellant about the Department's long-established "vendor payment policy." Under that policy, the Department does not count as income, in determination of AFDC benefits, money paid by another on behalf of an AFDC applicant or recipient if it is paid directly to a vendor such as a landlord. However, should the situation be as it was in Ms. Pond's case, where the money is paid directly to the applicant, and then paid to the landlord, that money is considered income for purposes of determining eligibility for benefits.[1]
The Department testified as to its practice of not disclosing to applicants a policy that may enable them to qualify for AFDC benefits. Instead, the Department maintains that "[a] person is either eligible or they are not eligible,' and that they would be glad to answer any questions and explain any of their procedures concerning income.
Ms. Pond complied with the caseworker's instructions and brought all requested documents to the Department on or before December 13, 1985. She then waited for a *1332 decision within the Department's 30-day time standard and, after not hearing from the Department, called several times to determine the status of her application. A Department employee explained to Ms. Pond that her case would not be processed until the Department assigned a new caseworker to her. It was then not until January 17, 1985, 71 days after the application date, and well beyond the time standard of 45 days set by law,[2] that the Department denied appellant's application for benefits. Even so, she was not made aware of the vendor payment policy until after her application for benefits had been denied, and only when she went down to the Department to inquire of the reason for the denial. At that point, a Department employee told her that she would have been eligible if her friends had paid the rent money directly to the landlord. Ms. Pond testified that had she known of the policy sooner, she would have complied with that policy and had her friends pay her rent directly to the landlord.
At the hearing, the Department admitted that the 71 days it took to process Ms. Pond's application was excessive and beyond the time standard as set forth by law. Its only excuse was an alleged shortage of staff.
In the final order affirming the denial of benefits, the hearing officer came to the following conclusion:
In processing any application a Specialist may become aware of a means by which an individual could become eligible. It is not the responsibility of the Specialist to create eligibility. However, it is also not the responsibility of a Specialist or Supervisor to withhold information regarding eligibility when directly questioned. The brochures and pamphlets which are available at the AFDC Office, advise applicants of the broad spectrum of information as set forth in 45 CFR 206.10(a)(2)(i). The hearing officer is unable to conclude that the regulation authorizes or requires a Specialist to counsel an applicant about changing existing financial arrangements ... and any applicant has the right to make inquiries which may reveal the Vendor Payment Policy. Although the Petitioner's argument has merit, it is concluded that disclosure of the Vendor Payment Policy is not a regulatory requirement.
Florida is required to comply with all federal laws, statutes and regulations that control the AFDC program. See King v. Smith, 392 U.S. 309, 317, 88 S.Ct. 2128, 2133, 20 L.Ed.2d 1118, 1125 (1968). Federal Regulation 45 C.F.R. § 206.10(a)(2)(i) provides in pertinent part:

Applicants shall be informed about the eligibility requirements and their rights and obligations under the program. Under this requirement individuals are given information in written form, and orally as appropriate, about coverage, conditions of eligibility, scope of the program, and related services available, and the rights and responsibilities of applicants for and recipients of assistance. (Emphasis added.)
It is Ms. Pond's argument that the Department had an affirmative duty to disclose its vendor payment policy to her based on that regulation. On the other hand, as reflected in the hearing officer's final order, the Department's position is that its function upon receipt of an application is to "discover," eligibility not to "create" eligibility. The Department's fear is that should this Court adopt Ms. Pond's argument it would be adopting a "profound and sweeping change in the law" requiring the Department not only to examine the applicant's factual condition in light of the applicable law, but then to counsel the applicant as to how to change his or her financial arrangements in order to create eligibility for benefits.
We sympathize with the Department's position and emphasize that our holding herein is narrowly limited to the peculiar circumstances existing in the instant case. Accordingly, where, as here, a caseworker is presented with specific and revealing information regarding the applicant's eligibility for benefits, that caseworker *1333 has an affirmative duty under 45 C.F.R. § 206.10(a)(2)(i) to inform that applicant at least orally of the conditions relevant to her eligibility. Thus, in the instant case, when the caseworker was confronted with unequivocal facts raising a red flag as to conditions of eligibility, it was incumbent on that caseworker not to encourage, or even passively to allow, activity leading to ineligibility, but to inform Ms. Pond of the policy upon which her eligibility was conditioned. By this holding we are not directing the Department to create eligibility; our holding requires nothing more than that which is required under the regulation, i.e., that "[a]pplicants shall be informed about the eligibility requirements and their rights and obligations under the program."
Although the hearing officer concluded that it is not the responsibility of a caseworker to withhold information regarding eligibility when "directly questioned," the regulation places no such burden on the applicant. Again, we emphasize that we are seeking nothing more from the Department of Health and Rehabilitative Services than to eschew its wall of silence policy, which apparently is lowered only in the event of astute questions on the applicant's part, and to work with the applicant in a spirit of "service," providing such information as each case warrants, or as is necessary under the law. See e.g., Lavigne v. Department of Social Welfare, 139 Vt. 114, 423 A.2d 842 (Vt. 1980); Slaughter v. Levine, 598 F. Supp. 1035 (D.Minn. 1984), on reconsideration, 605 F. Supp. 1242 (D.Minn. 1985); Simpson v. Miller, 535 F. Supp. 1041 (N.D.Ill. 1982).
Consequently, in light of appellant's testimony that she would have changed her circumstances to comply with the vendor payment policy had she been informed of that policy at the time, we reverse the final order and remand for further proceedings to determine the amount of benefits due her for the months in question, assuming that the monies she received from her friends and neighbors were actually paid to the landlord in accordance with the policy. In light of this holding, we need not reach appellant's second and third points regarding the Department's failure to review timely her application except insofar as to note that such delay exacerbated the problem, and to hold that the hearing officer erred in concluding that the hearing was not the proper forum to address the issue of the length of processing time. See Rule 10-2.44(3), Florida Administrative Code.
REVERSED and REMANDED for further proceedings.
WENTWORTH and NIMMONS, JJ., concur.
NOTES
[1] Apparently, the policy was generated by the Department's interpretation of 45 C.F.R. § 233.20(a)(3)(iv)(B), which appears under the subheading "Need and Amount of Assistance," and the broad heading "Coverage and Conditions of Eligibility." This section provides that

... in determining the availability of income and resources, the following will not be included as income ... (B) loans and grants, such as scholarships, obtained and used under conditions that preclude their use for current living costs... .
[2] See 45 C.F.R. § 206.10(a)(3)(i); rule 10C-1.80(9), Florida Administrative Code.