NIMMONS, Judge.
This appeal arises from a final order of the Department of Health and Rehabilitative Services (HRS) determining that appellant, an adult with dependent children, is ineligible for AFDC benefits for a period of two years because she had an available asset exceeding the maximum assets allowed to an AFDC family. We reverse.
HRS filed a notice indicating that it had determined appellant to be no longer eligible for AFDC benefits. At appellant’s request, a hearing was held. A “public assistance specialist” for HRS testified that First State Bank of Pensacola reported a savings account in the names of appellant and her mother, Leila L. Ruark. The account did not appear on appellant’s AFDC application. HRS determined that this account placed appellant over the $1000 available asset limit for eligibility.[1] An asset is “available,” and therefore considered in determining eligibility, if it is accessible to a member of the AFDC household, or where such legal restrictions are created or induced by the household member. 45 C.F.R. 233.20(a)(3)(ii)(D); Section 10C-1.-99(4), Florida Administrative Code. Appellant’s mother is not a member of appellant’s household. Appellant had her name removed from the account when she learned that it might affect her eligibility.
*1070 In her final order,[2] the hearing officer denied eligibility for AFDC benefits because of her conclusion that there was no legally binding restriction on her use of the ■ funds in the account. This appeal followed. In view of the evidence and the findings of fact expressed in the final order, we hold that the funds in the savings account were never “available” to the appellant within the meaning of the applicable rules.
The final order’s findings of fact regarding the subject savings account include the following:
The initial deposit was $1,950.41. This deposit was $700.00 cash plus a check from Prudential Insurance Company. The savings account has been dormant except for three deposits and quarterly accumulation of interest, and there have been no withdrawals. The account was a joint account payable to Leila L. Ruark or Mary Barlow from August 24, 1983 through March 14, 1986. The business records of the First State Bank reflect that the account statements were mailed to 7223 Highway 98 West, Pensacola, Florida 32506. [Mrs. Ruark’s address].
# # # * * ⅜
The $700.00 cash and the insurance check were the funds of Leila Ruark (Petitioner Exhibits 3 and 4). The additional deposits of $163.06 was a U.S. Treasury check and $70.00 cash were also the funds of Leila Ruark. Mary Barlow has not put any money into this account and has not made any withdrawals from this joint savings account. This account draws interest and the interest stays in the account. First State Bank reports to the Internal Revenue Service that Leila Ruark earns the interest on this account. The signature card completed when the joint savings account was opened has in [sic] the names of Leila L. Ruark or Mary Barlow (Petitioner Exhibit 2). Both Mary Barlow and Leila Ruark knew either party could withdraw any or all of the money out of the account.
Prior to opening the savings account Leila Ruark expressed to Mary Barlow that the money in the account was to be used for Ms. Ruark’s casket at the time of her death. Leila Ruark intended for Mary Barlow to be able to get the money when Leila Ruark died.
Mary Barlow perceived that she was to have access to this account only if her mother dies and considered this agreement to be binding. Mary Barlow considered that if she had bothered the savings account she would have been stealing from her mother. However, there is no document or anything in writing between Mary Barlow and Leila Ruark concerning this agreement. Mary Barlow’s name is no longer on this account.
Shortly before the establishment of the savings account, Mrs. Ruark’s husband (appellant’s father) died and Mrs. Ruark had suffered a serious heart attack. Mrs. Ruark desired that one of her children move to the area in order to help take care of her and to assure that she be properly buried upon her death.
Both Mrs. Ruark and appellant testified that the only reason for the inclusion of appellant’s name on the signature card was so that appellant would have ready access to the funds in the account upon Mrs. Ruark’s death, to be used only to defray her funeral expenses. The appellant was not to “touch” these funds for any purpose other than that described above. This testimony was uncontradicted.
From the above quoted portion of the final order, it is apparent that the reason for the hearing officer’s ruling adverse to appellant was that the understanding or agreement between Mrs. Ruark and appellant regarding the funds in the subject account was not in writing. We have found no authority, and have been cited to none, that supports the proposition that simply because the understanding between *1071 Mrs. Ruark and appellant was not in writing the appellant would be entitled to claim the funds in the subject account as her own.
It is true that as between the depositor and his joint signer, there is a strong presumption of joint ownership and that in the absence of strong evidence of a contrary intent, the joint ownership will not be disturbed. E.g. Constance v. Constance, 366 So.2d 804, 807 (Fla. 3rd DCA 1979). However, the evidence in this case, as reflected in the hearing officer’s above referred findings, is abundantly clear that the parties did have such a contrary intent. In fact, in view of the evidence in this case, including the uncontradicted testimony of both signatories to the account, if the hearing officer had made a finding that Mrs. Ruark intended a gift to appellant by the establishment of the account in both names, such a finding would not be sustainable because it would not be supported by competent substantial evidence.[3]
The order appealed is REVERSED and this cause is REMANDED with instructions to reinstate the benefits denied.
SHIVERS and THOMPSON, JJ., concur.

. See 45 C.F.R. 233.20(a)(3)(i)(B); Section 10C-1.99(1), Florida Administrative Code.

. In this type of administrative proceeding within the Department of H.R.S., the hearing officer’s order is the final order of the Department. See Section 409.285, Florida Statutes; Section 10-2.066(1), Florida Administrative Code.

. We note that the parties have loosely referred to the account as a "joint account.” The only document which was executed by Mrs. Ruark when she established this account was the Bank’s signature card. Although the card bore the signatures of both Mrs. Ruark and appellant under the heading “Authorized Signatures," the card was not completely filled out in that the spaces calling for an indication as to the nature of the account, i.e. "individual," "trust," or "joint tenancy with right of survivorship,” were left blank. But that makes no difference in our resolution of this case because of the evidence of the parties’ intent as summarized in this opinion.
We also note that whether the Bank, upon Mrs. Ruark’s death, would permit withdrawal of funds from the account by appellant may be open to question in view of the language of Section 658.55, Florida Statutes. See Harrison v. Huber, 463 So.2d 1190 (Fla. 2d DCA 1985). But, again, that makes no difference in our determination of the issue in this case, i.e. whether the funds were "available” to the appellant.