522 So.2d 951 (1988)
Charlotte WILLIAMS, Appellant,
v.
DEPARTMENT OF HEALTH AND REHABILITATIVE SERVICES, Appellee.
No. BR-159.
District Court of Appeal of Florida, First District.
March 18, 1988.
Joyce Henderson-Williams, Northwest Florida Legal Services, Inc., Pensacola, for appellant.
*952 Margaret E. Smithson, Dept. of Health and Rehabilitative Services, Pensacola, for appellee.
JOANOS, Judge.
Charlotte Williams (appellant) appeals an order of the Department of Health and Rehabilitative Services (HRS) terminating benefits under the Aid to Families with Dependent Children (AFDC) program. The questions presented for our review are: (1) whether receipt of a personal injury award by an AFDC recipient is considered a resource, and therefore exempt from the "lump-sum" rule; and (2) whether appellant has an equitable interest in an exempt asset, and whether transfer of this exempt asset would disqualify her from receipt of AFDC benefits for a period of two years. We reverse.
On July 21, 1986, appellant received a lump sum personal injury settlement for injuries she sustained in an automobile accident. At that time, appellant was still legally married but was separated from her husband. She resided with Mr. Weekly and their respective children in Mr. Weekly's mobile home. Appellant has two children by Mr. Weekly, and both she and Mr. Weekly have children from former marriages who reside with them.
Prior to receipt of the insurance settlement, appellant notified HRS personnel that she expected to receive the lump sum settlement, and asked what effect the settlement would have on her AFDC benefits. HRS records reflected that appellant's residence had been damaged by fire. In reviewing those records, the HRS caseworker explained that if appellant obtained a statement from the fire department condemning her dwelling, and then spent the settlement funds within seven days for another dwelling, the insurance settlement would not be counted as lump sum income. Otherwise, the insurance settlement would be counted as lump sum income, and appellant would be ineligible for AFDC benefits for a stated period of time.
The mobile home owned by Mr. Weekly was damaged by fire on three different occasions. On one occasion, the home sustained extensive electrical and smoke damage. By letter dated July 25, 1986, the Santa Rosa County Department of Public Works advised that the mobile home in which appellant and Mr. Weekly resided had been declared unfit for human habitation, and was therefore condemned. This letter was submitted into evidence at the subsequent hearing held on the department's decision to suspend appellant's AFDC benefits.
Acting upon the information provided by HRS representatives, appellant made a $5,000 down payment on a new mobile home. Most of the remainder of the insurance funds went toward expenses related to the mobile home, such as plumbing and electrical work. When appellant notified HRS of the mobile home purchase, it was discovered that Mr. Weekly was named as buyer on the sales contract for the mobile home. Appellant's name had not been included. HRS representatives in Santa Rosa County contacted the State Program Office for guidance on whether the lump sum personal injury award received by appellant should be excluded because of the condemnation of the old mobile home and subsequent purchase of a new mobile home, and whether it should be considered a transfer of assets. The local office was directed to consider the situation a transfer of assets.
Thereafter, HRS notified appellant that her medicaid/medical benefits and AFDC benefits were being cancelled for a period of two years due to a transfer of assets. Appellant sought review of the HRS decision. At the hearing held on the matter, neither appellant nor HRS was represented by counsel. An HRS case worker and her supervisor were present for the department, and appellant attended the hearing accompanied by a friend who had advised her earlier regarding her accident problems and who also attempted to counsel her with regard to her AFDC problem. The HRS representatives acknowledged that they had discussed the fact that appellant's personal injury award could be excluded from income for purposes of computing AFDC eligibility, if her dwelling had been condemned, *953 and if she obtained a statement from the fire department to that effect. Instead, appellant presented a statement from the Department of Public Works, which the HRS case worker considered unacceptable because the manual called for a statement from the fire department. The case worker said when she learned that the new mobile home had been purchased solely in Mr. Weekly's name, she called the Program Office to verify whether it should be considered a transfer of assets.
Appellant explained that she did not know in advance that her name would not be on the mobile home contract. A letter from the mobile home seller was submitted into evidence. This letter corroborates appellant's testimony, and reflects that the seller based his decision not to place appellant's name on the sale contract because, among other things, he did not want to subject appellant to potential indebtedness and ownership of property while she was still legally married to her estranged husband. In addition, the seller had known Mr. Weekly and his family for at least ten years, but had been acquainted with appellant only ten months.
The friend who accompanied appellant to the hearing explained to the hearing officer that appellant had been very confused about the situation. The caseworkers assigned to her case had been changed three times, and appellant thought she had handled the personal injury award as she had been advised to do. He stated that arrangements could be made to place appellant's name on the mobile home contract, if that proved to be the only bar to her continued receipt of AFDC benefits.
The hearing officer's final order found in part that appellant "was unaware that the plans were to only list the mobile home in the name of Mr. Weekly and had understood that if their old home was condemned and if she spent the money on a new home within seven days of receiving her check from the insurance company that her AFDC check would not be cut off." Despite this express finding, the hearing officer concluded that appellant's intent in purchasing the mobile home was to remain eligible for AFDC benefits, and that the department acted correctly in treating the purchase as a transfer of assets and terminating benefits.
AFDC is an assistance program administered under the auspices of federal and state regulations. To be eligible for AFDC benefits, an AFDC assistance unit may not own assets "in excess of one thousand dollars equity value," excluding the home. 40 C.F.R. § 233.20(1)(3)(i) (1986); Fla. Admin. Code Rule 10C-1.099(1).
If at any time the income of the AFDC assistance unit "exceeds the State need standard for the family because of receipt of nonrecurring earned or unearned lump sum income ... the family will be ineligible for aid for the full number of months derived by dividing the sum of the lump sum income and other income by the monthly need standard for a family of that size ..." 45 C.F.R. § 233.20(a)(3)(ii)(F) (1986). The concomitant Florida rule provides in part:
When the assistance group receives a lump sum payment of earned or non-earned income which is nonrecurring and which causes the assistance group's total net income to meet or exceed the Consolidated Need Standard (CNS), an additional calculation is required to determine the ineligibility period. The ineligibility period is the number of months the assistance group will remain ineligible for assistance based on receipt of income sufficient to meet the group's needs for the period. The ineligibility period is determined by dividing the total net available income in the lump sum receipt month by the CNS for the size assistance group.
In October 1986, section 233.20 of the Code of Federal Regulations was amended to include personal injury awards in the definition of income for purposes of the lump sum rule. However, the rule in place when AFDC benefits were terminated in this case did not specifically designate personal injury awards as income. See Lukhard v. Reed, ___ U.S. ___, 107 S.Ct. 1807, 95 L.Ed.2d 328 (1987). In Lukhard, Justice Scalia explained the distinction between treating money received by an assistance *954 unit as a "resource" or as "income," stating:
If a given sum of money were treated as a resource, the family that received the sum would be ineligible only until it spent enough of the sum to bring its resources down to the State's resource limit; but if the sum were treated as income, no matter how much was spent, the family would remain ineligible for the statutory period.
Prior to October 1986, the jurisdictions were divided on whether personal injury awards should be treated as income, and therefore subject to the lump sum rule. See, e.g., Vermeulen v. Kheder, 599 F. Supp. 1217 (W.D.Mich. 1984); Jackson v. Guissinger, 589 F. Supp. 1288 (W.D.La. 1984); Faught v. Heckler, 577 F. Supp. 1180 (S.D.Iowa 1983), aff'd, 736 F.2d 1235 (8th Cir.1984)  holding that personal injury awards should be treated as income, and Reed v. Health and Human Services, 774 F.2d 1270 (4th Cir.1985)  holding that personal injury awards should be treated as a resource. We note that in 1987, the Supreme Court reversed the Reed decision at ___ U.S. ___, 107 S.Ct. 1807, 95 L.Ed.2d 328 (1987).
Although the local HRS office sought guidance with respect to both the treatment to be accorded the lump sum award, as well as the transfer question, the Program Office decided only the transfer issue. Thus, the operative question in this appeal is whether appellant transferred an asset with the intent to remain AFDC eligible. The evidence adduced at the hearing established that appellant, acting in good faith, notified HRS caseworkers concerning the receipt of the personal injury award and sought their guidance with respect to the effect of the award on her AFDC eligibility. Acting on what she interpreted as the advice of the HRS case worker, which in effect was that if the award were spent on housing it would be excluded from income, appellant effected the purchase of the mobile home. The record reflects and the hearing officer so found, that appellant did not know that her name would not be listed as buyer on the sales contract, and she sought an explanation as soon as she became aware of the fact.
HRS predicated its determination that the purchase of the new mobile home constituted a transfer of an asset on the fact that appellant's name did not appear as joint buyer on the contract. Since appellant's unrefuted testimony indicated her name was omitted from the contract without her knowledge or acquiescence, the circumstances of this case present a constructive trust situation. A constructive trust is a remedy which a court will impose "to prevent an unjust enrichment of one person at the expense of another as the result of fraud, undue influence, abuse of confidence or mistake in the transaction that originates the problem." (Emphasis supplied.) Wadlington v. Edwards, 92 So.2d 629, 631 (Fla. 1957). The elements of a constructive trust are: (1) a confidential relationship, by which (2) one acquires an advantage which he should not, in equity and good conscience retain. Steigman v. Danese, 502 So.2d 463, 467 (Fla. 1st DCA), review denied, 511 So.2d 998 (Fla. 1987). The presumption of equitable ownership is increased when there is evidence that one party has paid all or a considerable part of the purchase price, since "[o]ne who provides the purchase price or a part thereof is presumed to be an equitable owner unless a contrary intent is ascertainable from the dealings of the parties." Waters v. Waters, 310 So.2d 452, 454 (Fla. 3d DCA 1975).
Constructive trust principles seem peculiarly applicable in the circumstances of the instant case. Appellant is in a confidential relationship with Mr. Weekly, whose name was listed as buyer on the mobile home contract. She provided $5,000 toward the purchase of the mobile home, as well as additional funds for wiring and other incidental expenses. The omission of appellant's name from the sale contract could be deemed a mistake, since it occurred without her knowledge or intent. Furthermore, since appellant provided a significant part of the purchase price of the mobile home, and since no contrary intent is ascertainable, she is presumed to be an equitable owner.
*955 It is well settled that fact-finding is the prerogative of the lower tribunal. Siegel v. Career Service Commission, 413 So.2d 796, 797 (Fla. 1st DCA), review denied, 424 So.2d 763 (Fla. 1982). While this court may not substitute its judgment for that of the agency as to disputed findings of fact or the weight of the evidence, an agency determination will be set aside if it depends on a fact not supported by competent evidence in the record. § 120.68(10), Fla. Stat. (1985); Barlow v. Department of Health & Rehabilitative Services, 512 So.2d 1069 (Fla. 1st DCA 1987); Gershanik v. Department of Professional Regulation, 458 So.2d 302, 304 (Fla. 3d DCA 1984), petition for review denied, 462 So.2d 1106 (Fla. 1985). In this case as in Barlow, the hearing officer's findings were supported by the record, but the hearing officer's final determination was contrary to the uncontradicted testimony of the witnesses, and to the finding of fact which went to the ultimate issue.
The factual scenario in this case is somewhat akin to those presented in Buckley v. Department of Health & Rehabilitative Services, 516 So.2d 1008 (Fla. 1st DCA 1987), and Pond v. Department of Health & Rehabilitative Services, 503 So.2d 1330 (Fla. 1st DCA 1987). In Buckley, an AFDC applicant was denied benefits because her name was shown with that of another person as joint owner of certain real estate having a net equity value of $9,097. HRS determined the applicant's one-half interest had a value of $4,548, which exceeded the permissible asset limit, thus defeating her eligibility. This court rejected the applicant's argument that her name was on the deed as a convenience to insure that her son by Powell would receive the property at Powell's death, thus she did not hold an interest in the property free of legal restrictions. Finding, however, that HRS failed to comply with the provisions of section 206.10(a)(2)(i) of the federal regulations, which "require that applicants shall be fully informed of eligibility requirements so they may change their circumstances sufficiently to comply with such requirements," the order denying benefits was reversed. 516 So.2d at 1010.
In Pond v. Department of Health & Rehabilitative Services, an HRS caseworker did not advise an AFDC applicant of a department policy not to count as income money paid directly by another on behalf of an AFDC applicant or recipient, if, as in Pond, the money was paid directly to a vendor such as a landlord. However, if the money were paid directly to the applicant and then to a vendor, it was considered income for AFDC eligibility purposes. Testimony on behalf of HRS established that it is department practice not to disclose "to applicants a policy that may enable them to qualify for AFDC benefits." 503 So.2d at 1331. Instead, the department representatives responded to questions and explained procedures concerning income. The hearing officer's order noted that brochures and pamphlets available at the AFDC office advised applicants "of the broad spectrum of information as set forth in 45 CFR 206.10(a)(2)(i)." 503 So.2d at 1332. The hearing officer affirmed the denial of benefits, concluding that HRS personnel are not required to counsel applicants about changing their existing financial arrangements, since any applicant has a right to make inquiries. This court reversed, finding that "where, as here, a caseworker is presented with specific and revealing information regarding the applicant's eligibility for benefits, that caseworker has an affirmative duty under 45 CFR § 206.10(a)(2)(i) to inform that applicant at least orally of the conditions relevant to her eligibility." 503 So.2d 1332-1333.
In the instant case, the caseworker acted correctly in advising appellant of the possible use which could be made of her personal injury lump sum award, so that the effect on her AFDC eligibility would be negligible. The hearing officer observed that the department was not in receipt of the seller's letter detailing his reasons for omitting appellant's name from the mobile home contract when the decision was made to suspend appellant's AFDC benefits for two years. The letter was available shortly thereafter, however, and based upon that letter, together with the witnesses' testimony, the hearing officer expressly *956 found that appellant lacked the requisite intent to transfer her interest in the mobile home to Mr. Weekly. This express finding, which is supported by competent substantial evidence, is directly contrary to the hearing officer's conclusion which approved the department's denial of appellant's AFDC benefits.
Therefore, in light of appellant's infinite good faith efforts to understand and to comply with AFDC eligibility requirements and her uncontradicted testimony that she effected the mobile home purchase based on HRS representations, we find that appellant should be treated as an equitable owner of the mobile home for purposes of AFDC eligibility or at the very least, be given a reasonable opportunity to have the title to the mobile home amended to correctly reflect her ownership interest. Due to our holding in this case, we do not address the first issue raised in this appeal, other than to observe that taking into account the department's affirmative duty to inform an AFDC recipient of the conditions relevant to her eligibility, together with the fact that personal injury awards had not been statutorily defined as income during the relevant time period, the circumstances of this case suggest that a preferred construction would be to treat the personal injury award as a resource. See, generally, Buckley v. Department of Health & Rehabilitative Services, 516 So.2d 1008, 1010 (Fla. 1st DCA 1987); Pond v. Department of Health & Rehabilitative Services, 503 So.2d 1330 (Fla. 1st DCA 1987). Accordingly, we reverse and remand the final order with directions to reinstate appellant's AFDC benefits and to determine appellant's entitlement to past due benefits.
Reversed and remanded for proceedings consistent with this opinion.
SMITH, CJ., and WENTWORTH, J., concur.