BOOTH, Judge.
Appellants, David and Mary Bussey, seek review of a final order of appellee, Department of Health and Rehabilitative Services (HRS), denying their request for payment of sums that HRS deducted from their grants of financial assistance under the Aid to Families with Dependent Children (AFDC) Program. Of the several issues raised on appeal, we find it necessary to address only two: first, whether the hearing officer erred in ruling that a state administrative hearing is not a proper forum for considering agency delay in processing an AFDC application, and second, whether the hearing officer erred in determining that certain loans were “income” under state and federal regulations, and deductible from AFDC benefits.
Mary and David Bussey applied for AFDC assistance for their family of four on July 11, 1986. Mr. Bussey was unemployed and incapacitated, and Mrs. Bussey, who had been working to support the family, was laid off her job and had exhausted unemployment benefits. The agency did not approve the application until November 4, 1986, due to its delay in ascertaining whether Mr. Bussey met the AFDC program’s incapacity requirement. On November 24,1986, the Busseys received their first checks, which included retroactive benefits for July through November of 1986.
In August, September, and October of 1986, while HRS was processing their application for AFDC benefits, the Busseys borrowed money from Ms. Bussey’s mother (Ms. Johnson) in order to pay their living expenses. At the hearing below, the Bus-seys presented written statements from Ms. Johnson that she loaned them $125 in August, $165 in September, and $165 in October of 1986, and that they paid her back in full when they received their AFDC checks in November of 1986. There was no written agreement between the parties.
In calculating AFDC benefits due the Busseys since July 11, 1986, HRS counted the loans from Ms. Johnson as income and deducted that income from a full AFDC grant of $298 per month for a family of four, which resulted in the following grants: July, $10; August, $173; September, $298; October, $173; November, $133; and December, $133.
The Busseys testified at the hearing below that they would not have had to borrow any money if the agency had processed their application promptly. They requested *986 reimbursement of the money from the loans which HRS deducted from their grants.
The agency acknowledged error in the length of time it took to process the application but argued that it had corrected any harm by providing retroactive benefits to the date of application and that it properly deducted the loans as income pursuant to HRS policy.
In the final order, the hearing officer concluded that 45 C.F.R. § 206.10(6)(i)(A)(2) mandated that assistance begin within 30 days of the receipt of the application but that the hearing was not the proper forum to address the issue of agency delay because HRS was already under court order to comply with time standards. He also concluded that HRS had corrected its error by providing retroactive benefits. Here, the agency took 116 days to determine eligibility, and the Busseys did not receive their first AFDC checks until 136 days after the date of the initial application. The agency concedes that it alone is responsible for the delay in this case.
In Pond v. Department of Health and Rehabilitative Services, 503 So.2d 1330, 1333 (Fla. 1st DCA 1987), this court held that a state administrative hearing is an appropriate forum in which to consider the length of application processing time. See Fla.Admin.Code Rule 10-2.44(3). Thus, the hearing officer erred in concluding that he could not address the issue of delay in processing the application.
The hearing officer also erred in concluding that the loans were income. In the final order, the hearing officer relied on the following state and federal regulations. 45 C.F.R. § 233.20(a)(3)(iv)(B) (1986):
A State Plan for ... AFDC, ... must, as specified below ... [pjrovide that in determining the availability of income and resources, the following will not be included as income ... loans and grants, such as scholarships, obtained and used under conditions that preclude their use for current living cost....
Fla.Admin.Code Rule 10C-1.102(3):
Income is considered in the assistance budget when received by the assistance group rather than when earned or accrued. Income must be available to meet the maintenance needs of the assistance group to be considered, except in the case of lump sum income....
The final order indicates that HRS policy concerning loans as income is primarily based on the above-quoted state and federal regulations.[1] 45 C.F.R. § 233.20(a)(3)(iv)(B) (1986); Fla.Admin.Code Rule 100-1.102(3). The hearing officer interpreted the above-quoted regulations to require loans, when not restricted from use for current maintenance, be included in income. Thus, the hearing officer, reasoning by reverse implication, ruled that the Bus-seys’ loans were income because the funds were available to meet maintenance needs.
Neither quoted provision supports the order below. The state rule, relied on supra, does not refer to loans at all, and the agency apparently has not adopted a rule setting out its loan-as-income policy. The federal regulation applies specifically to “loans and grants, such as scholarships,” under basic rules of statutory interpretation,[2] and may not be extended to other types of loans or read to imply that all other types of loans are “income.”
Federal case law construing 45 C.F.R. § 233.20(a)(3)(iv)(B) reveals that the purpose of the regulation is to prevent a state *987 from undermining federally-funded education programs by reducing AFDC benefits on account of funds received as educational loans, grants, and scholarships when such funds are not available to pay for living expenses.[3]
The federal regulation does not address the factual situation before us. The expansive construction, urged by HRS, is not permissible under rules of statutory interpretation, and we do not believe that construction was intended by Congress. Here, the private loans were made, not for educational assistance, but for living expenses until such time as HRS commenced payment of AFDC benefits. The agency’s position in this case is particularly egregious, since it was the agency’s delay in processing the application, contrary to federal law and its own rule, which required appellants to secure the loans for living expenses.
We conclude, therefore, that HRS’s “loan as income” policy is not supported by law and, as applied in this case, suffers the additional flaw of basic unfairness. The order below is reversed and the case remanded with directions that appellants be granted the requested relief.
WIGGINTON and ZEHMER, JJ., concur.

. The hearing officer concluded that HRS’s "loan as income policy is supported by regulation. He stated:
The loans received by the petitioners in August, September, and October of 1986 [were] in no way precluded from use in current maintenance. To the contrary, they were Used for maintenance of family needs. The regulation at 45 C.F.R. § 233.20(a)(3)(iv)(B) may be an unpleasant one for some individuals to accept but it is concluded that it does apply and it did cause the Busseys’ grants to be correctly reduced for the months of August, October, November, and December of 1986.

. Expressio unius est exclusio alterius. 49 Fla. Jur.2d Statutes § 126 (1984).

. See, e.g., in Hayes v. City University of New York, 503 F.Supp. 946, 957 (S.D.N.Y.1981), affirmed, 648 F.2d 110 (2d Cir.1981), wherein the court held:
The restricted-aid exclusion is consistent with [the] pervasive theme of the AFDC program. If an educational assistance grant cannot be used by a student for current living costs, then reducing AFDC benefits merely because the student has on paper received additional income would be unfair and would undermine Congress’ desire to encourage the pursuit of a higher education.
See also Richman v. Juras, 393 F.Supp. 349 (D. Oregon 1975) (Congress exempted from consideration as income only scholarship and loan funds actually used to pay tuition and fees); Brown v. Bates, 363 F.Supp. 897 (N.D. Ohio, W.D.1973) (money received under the work-study program constituted a "grant” within the meaning of the federal regulation).