Mary L. **WIEDMEIER,** Appellant,

v.

**NORTH DAKOTA DEPARTMENT OF HUMAN SERVICES and Burleigh County Social Service Board,** Appellees.

Civ. No. 920002.

Supreme Court of North Dakota.

Nov. 5, 1992.

Legal Assistance of North Dakota, Bismarck, for appellant; argued by David Boeck, Bismarck.

Sidney Hertz Fiergola (argued), Asst. Atty. Gen., Atty. Gen.'s Office, Bismarck, for appellees.

JOHNSON, Justice.

Mary Wiedmeier appeals from a district court judgment affirming a decision by the Department of Human Services [the Department] finding her ineligible for Aid to Families with Dependent Children [AFDC] benefits from November 1990 through July 1991. We affirm.

Mary and her son have received AFDC benefits intermittently since 1982. Mary serves in the National Guard and receives income for weekend drills and annual summer camp. When Mary received income from summer Guard camp, her income for the month would exceed AFDC eligibility requirements and her caseworker would close her AFDC case for one month.

In June 1990 Mary was injured at summer Guard camp. Mary was incapacitated until September 6, 1990, when her physician released her to return to regular week-end drills. During the period she was incapacitated, the Guard assigned Mary to "incap pay status." Under this status, Mary would receive active duty pay for the period she was incapacitated, to be paid in a lump sum after her incapacity ended.

In August 1990 Mary advised her caseworker of the situation, explaining that she would be receiving a payment from the Guard but that she did not know how much it would be or when she would receive it. Mary testified that she expected the payment to be "a percentage of what my summer camp check was going to be, which I assumed was going to be a few hundred" dollars. Her caseworker testified that Mary was not anticipating a large amount, and that there was no reason to believe it would exceed her eligibility limits "for more than a month or so."

On October 26, 1990, Mary received a check for $2,964.58 from the Guard. She reported this to her caseworker in November. Under Department rules, the amount of the lump sum was prorated and Mary was advised that she would be ineligible for AFDC benefits from November 1990 through July 1991.

Mary appealed to the Department, arguing that the caseworker had a duty to advise Mary of lawful methods by which she might have avoided the harsh effect of the lump sum rules. Following a hearing, the hearing officer issued recommended findings of fact and concluded that the caseworker had no duty to provide additional advice to Mary. The Department adopted the hearing officer's recommended findings, and Mary appealed to the district court. The district court held that, under the facts presented, the caseworker had no duty to provide further advice to Mary. Mary has appealed to this court.

The AFDC program has been characterized as an exercise in cooperative federalism, governed by various federal and state statutes and regulations. *King v. Smith,* 392 U.S. 309, 316, 88 S.Ct. 2128, 2133, 20 L.Ed.2d 1118, 1125 (1968); *S.W. v. North Dakota Department of Human Services,* 420 N.W.2d 344, 346 (N.D.1988); *see* 42 U.S.C. § 601 *et seq.;* 45 C.F.R. ch. II;

Chapter 50–09, N.D.C.C.; Chapter 75–02–01, N.D.A.C.

The federal statutes and regulations provide that a nonrecurring lump sum received by an AFDC family in a month when they received benefits must be prorated. *See* 42 U.S.C. § 602(a)(17); 45 C.F.R. § 233.-20(a)(3)(ii)(F). Under the federal formula, the lump sum is added to any other income received that month, and any applicable exemptions are subtracted. If this amount exceeds the family's monthly "standard of assistance," it is divided by that monthly standard. The family is disqualified from AFDC benefits for the number of months equal to the quotient and any remainder is counted as income in the month after total ineligibility ceases. In other words, the lump sum is prorated and treated as monthly income in the amount the family would ordinarily receive as benefits.

To illustrate using the facts of this case, Mary received the $2,964.58 lump sum in October 1990. That month she also had income of $149.52, but $90 of that was exempt as a work expense deduction. Thus, $59.52 is added to $2,964.58, and the total of $3,024.10 is divided by the family's monthly assistance standard of $326. This produces a quotient of 9 with a remainder of $90.10. Accordingly, Mary was found to be ineligible for 9 months, through July 1991, and $90.10 was counted as income in August 1991.

Authorized means exist to avoid some consequences of the lump sum rules. Because the rules apply only if the lump sum is received in a month when the family received AFDC benefits, the case may, under certain circumstances, be closed for that month to avoid consideration of the lump sum. The family's ability to close the case is affected by the time of the month when the lump sum is received. The options are explained in the Department's manual:

"a) If a recipient informs the county social service board of the receipt of a nonrecurring lump sum prior to the 15th of the month or the first working day after the 15th, if it falls on a weekend or holiday, and the lump sum will cause the family to be ineligible for AFDC, the recipient should be informed that he/she may request that the case be closed for that month. The assistance unit is then not considered to have received AFDC in that month. Lump sum payments received in a month the assistance unit does not receive AFDC will not be prorated. The case is closed for that month and the unit may reapply in a later month when resources are below $1,000. If the assistance unit does not report the nonrecurring lump sum payment until after the 15th of the month, the lump sum income must be prorated. The period of ineligibility starts with the month following the receipt of the lump sum payment. If a recipient reports the receipt of nonrecurring lump sum income after the 15th of the month, and it makes the family ineligible for AFDC, the household is automatically subject to the prorate even if they request their case to be closed for the month and even if they return the AFDC check uncashed.

"If a client requests closure of the case after the 15th, and does not tell the agency why, and it is later learned that a nonrecurring lump sum payment was the reason, that household should be notified they will be subject to the lump sum prorate process.

"If a household anticipates receiving a lump sum payment and it is expected to make the family ineligible, they may request their case be closed any time prior to the 15th of the month. If it later turns out that the anticipated income was not received, they would need to notify the county of this no later than the last working day of the month and request that their case be reverted to open. The request to revert the case to open must be received in the same month in which the case was closed. If the request is not received until the following month, the case cannot be reverted to open and a new application, subject to a grant prorate, will be needed and assistance for the closed month is lost. If the recipi-

ent requests the case be reverted to open on the 28th of the month, for example, and the lump sum is received on the 29th, the case is subject to the grant prorate."

In substance, if the lump sum is received before the 15th of the month, the family may close their case for that month and will be eligible in any succeeding month when assets have fallen below $1,000. If the family does not know when the lump sum will be received, they may close their case each month and, if the lump sum is not received, may reopen up until the last working day of the month. If the lump sum is received during that month, they may leave their case closed and reapply as soon as their assets fall below $1,000.

In this case, Mary received her lump sum payment on October 26, 1990. She had not previously closed her case for that month, and accordingly she was subject to the lump sum prorate rules. Mary argues, however, that her caseworker should have warned her about the relevant rules and advised her of her option to close her case each month and reopen on the last working day of each month. Had she done so, she asserts, she would not have been subject to the lump sum prorate rules and would have been eligible to reapply for benefits sooner than August 1991.

Mary raises two separate issues on appeal:

"1. Whether, under any set of facts, the North Dakota Department of Human Services (Department) and the Burleigh County Social Service Board (Board) have a duty to inform a recipient of Aid to Families with Dependent Children (AFDC) benefits about a method by which she can lawfully minimize the impact of the harsh, federal AFDC 'lump sum' rule on her AFDC case.

"2. If such a duty exists, whether Appellant, Mary L. Wiedmeier (Mary), disclosed sufficient facts to the Board to invoke that duty when Mary reported that she expected to receive a lump sum of money."

We find it unnecessary to resolve the first issue because we hold that, even if there is under some circumstances a duty to inform a claimant of options to avoid the lump sum rules, that duty was not triggered under the facts of this case.

The cases cited by Mary which have imposed a duty upon caseworkers to advise claimants of methods to avoid similar rules have involved situations where it was obvious to the caseworker that the ineligible claimant would be made eligible for benefits if the additional information had been provided. *See Gonzalez v. Department of Health and Rehabilitative Services,* 558 So.2d 32 (Fla.Ct.App.1989); *Pond v. Department of Health and Rehabilitative Services,* 503 So.2d 1330 (Fla.Ct.App.1987). For example, in *Pond, supra,* the claimant's friends and neighbors were giving her money to pay her rent. These sums were treated as income to her and rendered her ineligible for AFDC benefits. The caseworker told the claimant to continue accepting these sums from her friends but to verify the contributions. The caseworker failed to advise the claimant that under the Department's long-standing "vendor payment policy," these payments would not be considered income to her if the payments were made directly to the landlord, rather than passed through her.

The court held that, under the circumstances presented, the caseworker had a duty to advise the claimant of the vendor payment policy:

"We sympathize with the Department's position and emphasize that our holding herein is narrowly limited to the peculiar circumstances existing in the instant case. Accordingly, where, as here, a caseworker is presented with specific and revealing information regarding the applicant's eligibility for benefits, that caseworker has an affirmative duty under 45 C.F.R. § 206.10(a)(2)(i) to inform that applicant at least orally of the conditions relevant to her eligibility. Thus, in the instant case, when the caseworker was confronted with unequivocal facts raising a red flag as to conditions of eligibility, it was incumbent on that caseworker not to encourage, or even pas-

sively to allow, activity leading to ineligibility, but to inform Ms. Pond of the policy upon which her eligibility was conditioned."

*Pond, supra,* 503 So.2d at 1332–1333.

*Gonzalez, supra,* is similar. The Department would not act on the AFDC application until it received additional documentation from the Immigration and Naturalization Service. Caseworkers advised the claimant, who did not speak English, that they could assist her in obtaining the documentation from INS, and she signed a form indicating that she understood this. The caseworkers failed, however, to advise the claimant that she had to sign a separate waiver before the Department could render such assistance. As a result, action on the AFDC application was delayed for fifteen months. The court, noting that this was precisely the type of "red flag" situation envisioned in *Pond,* ordered restoration of benefits. *Gonzalez, supra,* 558 So.2d at 33–34.

In contrast, the caseworker in this case was not "presented with specific and revealing information," nor was she "confronted with unequivocal facts raising a red flag as to conditions of eligibility." *See Pond, supra,* 503 So.2d at 1332–1333. Rather, the caseworker received inexact, ambiguous information. She was told only that Mary would be receiving some unspecified amount at some undisclosed time in the future. Mary herself testified that she expected to receive only a "few hundred" dollars, and the caseworker testified that she did not believe it would affect Mary's eligibility for more than a month or two. In effect, neither Mary nor the caseworker anticipated an amount that would render Mary ineligible for an extended period of time. In addition, it appears that Mary had been receiving these benefits since 1982 and was aware that eligibility problems arose from her summer camp employment income. These facts do not demonstrate the "red flag" contemplated by the Florida cases which would trigger a duty to advise Mary of the available means to avoid the lump sum rules. This is not to say we condone insufficient or inadequate disclosure of the often complex eligibility requirements.

We hold that, assuming there may in some instances be a duty to advise claimants of methods to avoid the lump sum rules, no such duty arose under the facts presented in this record. The judgment of the district court upholding the Department's decision is affirmed.

ERICKSTAD, C.J., and VANDE WALLE, MESCHKE and LEVINE, JJ., concur.