GROSS, J.
Sylvia Forman challenges a final order denying her Medicaid benefits under the Institutional Care Program (ICP) for August through November 2005 due to For-man’s failure to establish an income trust account prior to December 2005. We reverse.
Forman is 90 years old and does not have substantial assets. Her only income is a monthly pension check from the American Postal Workers’ Union of $1,904.
In the spring of 2005, Forman’s doctors told Sarah Leftow, Forman’s daughter, that it was necessary for Forman to live in a skilled nursing facility.
At that time, Leftow began the Medicaid approval process on Forman’s behalf. The Department of Children and Families assigned the matter to case specialist Marle-na Roker. On August 18, 2005, Forman submitted an application for ICP Medicaid benefits. Leftow submitted all the papers and documents that Roker told her were required for Medicaid eligibility. Leftow and Roker never discussed a Medicaid income trust account.
On August 24, 2005, Forman was admitted into Manor Care of Boca, a skilled nursing facility. Forman did not have the money for such a facility without Medicaid assistance. Manor Care therefore accepted Forman as a Medicaid pending resident, which meant that the facility anticipated Medicaid reimbursement for the time Forman spent in Manor Care prior to approval.
Leftow established a checking account at Amtrust Bank in August, 2005. The sole function of the account was to receive direct deposits of Forman’s pension check. In September, 2005, a pension check was deposited into the checking account. Lef-tow immediately sent all of the proceeds from the check to Manor Care, thus creating what she described as a “de facto trust.”
In December 2005, Roker notified Lef-tow that her mother’s application for Medicaid benefits had been denied because a proper income trust account had not been established.[1] This was the first time that DCF notified Leftow that establishment of an income trust account was a necessary prerequisite to Forman’s eligibility for ICP Medicaid benefits. Leftow testified at the hearing that had Roker informed her of this requirement, she would have established and funded an income trust account. Leftow relied upon the expertise of a “specialist” like Roker to determine what she needed to submit to ensure that her mother would be eligible for benefits.
Immediately after the notification from DCF, Leftow established a Medicaid income trust account. DCF then found For-man to be eligible for Medicaid. Medicaid paid for the services given to Forman beginning December 2005. Forman was *479 deemed responsible for the shortfall to Manor Care from August 24, 2005 through November 30, 2005 because of the failure to establish an income trust account.
Because Forman is indigent, she was unable to make any payments for these months. Manor Care notified Forman and her family that Forman would be discharged from the facility unless the nursing home bills were paid. Forman’s family has no funds to pay the nursing facility.
Forman appealed the denial of ICP benefits for August through November 2005. In his order denying the appeal, the hearing officer ruled that denial of benefits for August through November, 2005, was correct because ICP benefits were authorized only after the income trust was established in December, 2005.
Florida Administrative Code 65A-1.713, SSI-Related Medicaid Income Eligibility Criteria provides, in pertinent part:
(1) Income limits. An individual’s income must be within limits established by federal or state law and the Medicaid State Plan. The income limits are as follows:
[[Image here]]
(d) For ICP, gross income cannot exceed 300 percent of the SSI federal benefit rate after consideration of allowable deductions set forth in subsection 65A-1.713(2), F.A.C. Individuals with income over this limit may qualify for institutional care services by establishing an income trust which meets criteria set forth in subsection 65A-1.702(15), F.A.C.
(Emphasis added).
Florida Integrated Public Policy Manual, passage 1840.0110 Income Trusts (MSSI) describes the prerequisites for creating a qualified income trust. The Manual also states that
The Economic Self-Sufficiency Specialist must advise the individual that they cannot qualify for Medicaid institutional care services or HCBS for any month in which their income is not placed in an executed income trust account in the same month in which the income is received. (This may require the individual to begin funding an executed income trust account prior to its official approval by the District Legal Counsel.)
(Emphasis added). This policy recognizes that those seeking admission to a skilled nursing facility often will require the assistance of government specialists to navigate the complexity of applicable Medicaid-related regulations.
Where an applicant has in good faith attempted to comply with a welfare regulation and an agency representative has not complied with an obligation to fully inform the applicant of eligibility requirements, Florida courts have held applicants to be eligible for benefits. See generally Pond v. Dep’t of Health & Rehab. Servs., 503 So.2d 1330 (Fla. 1st DCA 1987); Buckley v. Dep’t of Health & Rehab. Servs., 516 So.2d 1008, 1009 (Fla. 1st DCA 1987); Gonzalez v. Dep’t of Health & Rehab. Servs., 558 So.2d 32 (Fla. 1st DCA 1989).
In Pond, an Aid to Families with Dependent Children (AFDC) applicant told a caseworker that her rent was $95 per week and that she received money to pay the rent directly from friends and neighbors. 503 So.2d at 1331. The caseworker did not explain that under the Department’s “vendor payment” policy, money paid by another on behalf of an applicant did not count as “income” if it was paid directly to a vendor, such as a landlord. Id. In affirming the denial of benefits, the hearing officer concluded that HRS personnel were not required to counsel applicants about changing their existing financial arrangements. Id. at 1332. However, the first district reversed, finding that “where, as here, a caseworker is presented with specific and revealing information re *480 garding the applicant’s eligibility for benefits, that caseworker has an affirmative duty under 45 CFR § 206.10(a)(2)(i) to inform that applicant at least orally of the conditions relevant to her eligibility.” Id. at 1332-33.
Similarly, in Buckley, an AFDC applicant was denied benefits because her name appeared on a deed as joint owner of real estate having a net equity value of $9,097. HRS concluded that the applicant’s interest was worth $4,548, which exceeded the permissible asset limit and defeated her eligibility for benefits. 516 So.2d at 1009. The first district reversed an order denying benefits, finding that HRS failed to fulfill its duty to fully inform the applicant of eligibility requirements, so that she could have had her property excluded from the asset computation for six months while she tried “to dispose of her interest or seek a declaration that her interest was subject to a legal restriction.” Id. at 1010; see also Gonzalez, 558 So.2d at 32.
The obligation imposed upon DCF by passage 1840.0110 of the policy manual is similar to that created by 45 C.F.R. § 206.10(a)(2)(i) in Buckley and Pond. Leftow set up an account to transfer the entire proceeds of her mother’s pension check to Manor Care. She is correct that she created a de facto income trust. Had she known the specifics of the income trust, she would have complied with that requirement. Because Forman was erroneously deprived of benefits as a result of the failure of the DCF specialist to comply with the policy manual, the order denying benefits is reversed, and the case is remanded for further proceedings consistent with this opinion.
WARNER and TAYLOR, JJ., concur.

. Section 65A-1.701(26), Florida Administrative Code, defines a "Qualified Income Trust” as one "established on or after October 1, 1993, for the benefit of an individual whose income exceeds the ICP income standard and who needs institutional care or Home and Community Based Services. The trust must consist of only the individual’s pension, Social Security and other income. The trust must be irrevocable and provide that upon the death of that individual the State shall receive all amounts remaining in the trust up to an amount equal to the total amount of medical assistance paid on behalf of that individual pursuant to the state's Title XIX state plan.”