FERNANDEZ, J.
Sergio Garcia appeals the final order of the Florida Department of Children and Families (DCF), Office of Appeals Hearings, affirming DCF’s action to establish two claims of overpayment of Medicaid assistance against Garcia in the sum of $42,716.53. We reverse, concluding that DCF is not authorized to collect from Garcia $31,155.53 in first period Medicaid benefits, which he was eligible to receive and is entitled to retain.
The facts of the case are undisputed. The now ninety-two-year-old Garcia is a retired senior citizen who receives Social Security benefits and a teacher pension. In June 2010, Garcia was admitted to a nursing home in Miami-Dade County.
On August 31, 2010, DCF informed Garcia in a “Notice of Case Action” that he would receive full public assistance under the Medicaid’s Institutional Care Program (ICP) for the period from “July 2010 to October 2010 Ongoing.” In essence, in this “Notice of Case Action,” DCF notified Garcia that he satisfied all prerequisites to receive Medicaid benefits. Garcia received full Medicaid benefits for the period from *962 June 2010 to May 2011 in the amount of $42,716.53 (“the First Period”).
In May 2011, DCF reviewed Garcia’s monthly gross income to determine if he was still eligible for full public assistance for the next period of Medicaid benefits, which began on June 1, 2011 (“the Second Period”). Garcia submitted to DCF Form 1099-P as documentary proof of his gross income from his teacher pension. DCF erroneously believed that Garcia’s monthly gross income increased from the First Period to the Second Period. Garcia informed DCF that his gross income had not changed, or remained substantially the same, during both periods. DCF then informed Garcia that it had overlooked Garcia’s gross income from his teacher pension during the First Period.[1] DCF informed Garcia that he was eligible to receive partial Medicaid benefits for the Second Period rather than full Medicaid benefits because his monthly gross income for the Second Period exceeded the monthly gross income limit of $2022.[2] DCF further informed Garcia that in order to receive partial Medicaid benefits for the Second Period, Garcia was required to 1) create a qualified income trust (QIT) for the benefit of the State of Florida, and 2) pay a portion of his nursing home fees.[3] Garcia created a QIT, which DCF’s District Legal Counsel approved.
On July 25, 2011, DCF notified Garcia that he would receive partial Medicaid benefits for the Second Period. Throughout the Second Period, Garcia funded the QIT and paid approximately $801 monthly to the nursing home. Garcia currently receives partial Medicaid benefits for the Second Period on the same or substantially the same amount of monthly gross income he had received for the First Period.
DCF informed Garcia in October 2011, that he was responsible for the entire amount of Medicaid benefits he had received for the First Period as a result of his failure to create a QIT for that period. At the administrative hearing that followed, DCF argued that a QIT for the First Period could not be funded retroactively. The lower tribunal found that Garcia “was approved for the ICP Medicaid benefits and the issue of needing to establish a QIT did not arise” because DCF had erroneously found Garcia to be within the income limit for the First Period. Consequently, DCF did not timely inform Garcia that he was required to create a QIT in order to become eligible for partial Medicaid benefits during the First Period.
During the proceedings below, DCF did not dispute that Garcia would have been eligible to receive $31,155.53 in partial Medicaid assistance for the First Period had DCF timely taken into account Garcia’s teacher pension income, and timely notified Garcia that he was required to *963 create a QIT and pay a part of the nursing home fees for the First Period. DCF also did not dispute that Garcia did not receive a windfall of $31,155.53 in the First Period.
Garcia now contends on appeal that DCF is not authorized to collect from him First Period Medicaid benefits of $31,155.53, which he was eligible to receive and is entitled to retain. We agree, concluding that Forman v. Department of Children & Families, 956 So.2d 477 (Fla. 4th DCA 2007), is directly on point and particularly instructive.
In Forman, Sarah Leftow, Sylvia For-man’s daughter, submitted an application for ICP care on her ninety-year-old mother’s behalf on August 18, 2005. Id. at 478. Leftow submitted all the documents that DCF required for Medicaid eligibility, but she did not discuss a Medicaid income trust account with DCF. Id.
Forman was admitted to a skilled nursing facility on August 24, 2005. Id.
Although Forman did not have the money for such a facility without Medicaid assistance, the facility accepted Forman as a Medicaid pending resident. Id.
Leftow created a checking account at a bank in August 2005, in order to receive direct deposits of Forman’s pension check. Id. Leftow received a pension check deposit in September 2005, after which she sent the proceeds of the check to the facility. Id. She thereby created a “de facto trust.” Id.
In December 2005, Leftow received notification from DCF that DCF had denied her mother’s application for Medicaid benefits because a QIT account was not established. Id. DCF never notified Leftow that establishment of an income trust account was a necessary prerequisite to For-man’s eligibility for ICP Medicaid benefits. Id. At the hearing on the matter, Leftow testified she would have established and funded an income trust account, if DCF had informed her of the requirement.
After DCF notified Leftow of the requirement, she established a Medicaid income trust account. DCF then found For-man to be eligible for Medicaid and paid for Foreman’s services, beginning December 2005. However, Forman was held responsible for the deficit to the skilled nursing facility from August 24, 2005 through November 30, 2005, as a result of her failure to establish a QIT account. Id. at 478-79.
Forman appealed the denial of ICP benefits for August through November 2005. Id. at 479. In his order denying the appeal, the hearing officer ruled that denial of benefits for August through November 2005 was correct because ICP benefits were authorized only after the income trust was established in December 2005. Id.
On appeal to the Fourth District Court of Appeal, the court began its analysis by stating that under Florida Administrative Code 65A-1.713, SSI-Related Medicaid Income Eligibility Criteria, certain Medicaid applicants whose gross monthly income exceeds the limit may be eligible for institutional care services if the applicant establishes a QIT. Id. The court then stated that under Florida’s Integrated Public Policy Manual, passage 1840.0110 Income Trusts (MSSI), which describes the prerequisites for creating a qualified income trust, DCF had a legal obligation to timely notify the Medicaid applicant of the need for a QIT as a prerequisite for partial Medicaid benefits. Id. The court quoted the Manual as follows:
The Economic Self-Sufficiency Specialist must advise the individual that they cannot qualify for Medicaid institutional care services or HCBS for any month in which their income is not placed in an executed income *964 trust account in the same month in which the income is received.
Id. The court noted that this policy recognizes that those who seek admission to a skilled nursing facility often will require assistance from government specialists to navigate the complexity of applicable Medicaid-related questions. Id. The court further stated:
Where an applicant has in good faith attempted to comply with a welfare regulation and an agency representative has not complied with an obligation to fully inform the applicant of eligibility requirements, Florida courts have held applicants to be eligible for benefits. See generally Pond v. Dep’t of Health & Rehab. Servs., 503 So.2d 1330 (Fla. 1st DCA 1987); Buckley v. Dep’t of Health & Rehab. Servs., 516 So.2d 1008, 1009 (Fla. 1st DCA 1987); Gonzalez v. Dep’t of Health & Rehab. Servs., 558 So.2d 32 (Fla. 1st DCA 1989).

Id.

The court also noted that Leftow set up an account to transfer the entire proceeds of her mother’s pension check to the facility and thereby created a de facto income trust. Id. at 480. Importantly, the court noted that had Leftow known of the QIT requirement, she would have complied with it. Id. The court then held that because “Forman was erroneously deprived of benefits as a result of the failure of the DCF specialist to comply with the policy manual, the order denying benefits is reversed, and the case is remanded for further proceedings consistent with this opinion.” Id.
Garcia contends, just like the applicant in Forman, that if DCF had timely informed him of the need for a QIT for the First Period, he would have created one, just as he had created one for the Second Period, immediately after DCF informed him that a QIT was required. We agree with Garcia that under Forman, DCF erred when it failed to comply with its legal obligation to timely inform Garcia of the need to create a QIT for the First Period, and then faulted Garcia for his failure to create a QIT for the First Period. This deprived Garcia of $31,155.53 in Medicaid benefits he was unquestionably entitled to receive had DCF not erred and breached its legal obligation owed to Garcia. Thus, consistent with Foreman, we hold that Garcia is eligible for benefits as a matter of law, and DCF was not authorized to recover $31,155.53 in partial Medicaid benefits. Instead, DCF is only entitled to recover $11,561, the amount Garcia was not eligible to receive, and would not have received, had DCF correctly taken into account his teacher pension.
We therefore reverse the final order of DCF’s Office of Appeals Hearings, and remand to the lower tribunal with direction to enter a final order that limits DCF’s recovery from Garcia to $11,561.
Reversed and remanded.

. DCF believed that Garcia withheld this financial information. However, DCF later found in its possession an image of Form 1099-P which reflected Garcia’s teacher pension income.

. During discussions with DCF in June 2011, Garcia realized a possible need to create a QIT for the First Period.

. Section 65A-1.701(26), Florida Administrative Code, defines a "Qualified Income Trust” as one "established on or after October 1, 1993, for the benefit of an individual whose income exceeds the ICP income standard and who needs institutional care or [Home and Community Based Services]. The trust must consist of only the individual's pension, Social Security and other income. The trust must be irrevocable and provide that upon the death of that individual the State shall receive all amounts remaining in the trust up to an amount equal to the total amount of medical assistance paid on behalf of that individual pursuant to the state’s Title XIX state plan.”